## Hoffman *versus* Bechtel.

1. The contract of guaranty, unlike that of surety, is collateral and secondary : the guarantor is liable only when the debtor has proved insolvent after *due diligence* by the creditor to obtain payment.

2. *Due diligence* is that which a vigilant creditor employs when he has no other security than the obligation of the debtor.

3. If the creditor employs legal process against the debtor without delay, the *primâ facie* presumption is that he has been *duly diligent;* but suing out process simply, and letting it run its course, may not be due diligence.

4. In an action on a guaranty, facts, tending to show that the creditor failed to use with good faith that diligence which prudent creditors ordinarily employ, should be submitted to the jury on the question of due diligence.

ERROR to the Court of Common Pleas of *Berks county*.

This was an action of covenant by Allen Bechtel against Jacob Hoffman, on a guaranty by the defendant, of a bond assigned by him to the plaintiff.

On the 25th of November 1857, F. R. Henninger gave a bond to Hoffman for the payment of $2000, with interest, on the 1st of October 1858. Judgment was entered on this bond January 29th 1858.

On the 1st of February 1858, Hoffman assigned the bond to Bechtel, " guaranteeing the payment thereof in case of default being made by" Henninger.

A *fi. fa.* was issued on this judgment October 2d 1858, to which the sheriff returned an appraisement to defendant under the exemption laws, and a sale of his goods for $603.88 besides costs. Henninger's real estate, consisting of two frame houses, was sold under the same judgment to his wife for $70. Bechtel bought personal property to the amount of $287.77, and " Mrs. Henninger bought the body of the rest" of it.

The balance of the debt was not collectable from Henninger, and Bechtel brought suit on the guaranty January 3d 1861.

On the trial the plaintiff proved the above-stated facts.

The defendant then proposed to prove :—

1. The value of the personal property of Henninger at the time of the levy and sale, for the purpose of showing that there was sufficient property to pay the judgment if due diligence and good faith had been used, and that it exceeded $4000.

2. The following special matter of which he had given notice : " That Frederick R. Henninger, the obligor in the bond which the

[Hoffman v. Bechtel.]

defendant assigned to the plaintiff and guarantied the payment thereof, was the owner of a lot and two houses situated on Seventh street in Reading, worth $2500, upon which the judgment entered on the assigned bond was a lien, subject to two prior mortgages on which were due on the 29th day of July 1859, the sum of $900, besides a small amount of interest: that these mortgages were given to secure the children of Frederick Haberacker, deceased: that the plaintiff issued executions on said judgment and caused the said lot and houses to be sold by the sheriff: that the plaintiff paid no attention to the sale of said property, and absented himself from the sale, and that by reason of his inattention and neglect it was sold for $70, to the wife of the defendant in the execution : .that there was a person at the sale, to wit, the agent of Mrs. Henninger, for the purpose of bidding from $1800 to $2000, subject to the said mortgages: that after the property was struck off the plaintiff came to the place of sale, and in reply to a question why he did not attend sooner, said that he took a sleep, and that he did not care, as he was secured for his claim."

Also, that Bechtel refused to apply to the court to set aside the sheriff's sale, and that after the sale, he privately offered to the purchaser an advance of $50 on his bid, if the purchaser would transfer the bid to him.

Also, reasons for setting aside the sheriff's sale, filed by him August 8th 1858, as follows :—

1. That the property sold to Mrs. Henninger, the wife of defendant, for $70, subject to a mortgage of $800 ; that the property rents at $200 per annum, and is worth at least $1500 ; and that it is supposed that the sale was managed for the benefit of the defendant.

2. That there are persons who will bid $1500 for the property if resold; and that one of them had no knowledge of the sale until the deed was acknowledged.

Also, the acknowledgment of the sheriff's deed made before reasons filed but not entered till afterwards; the dismissal of exceptions and delivery of the deeds ; but did not offer to prove any act or declaration of Bechtel relating to setting aside the sale.

Each of these offers was rejected by the court, and exception taken.

The court (Woodward, P. J.) charged the jury as follows :—

" The documentary and record evidence in this cause is undisputed. If the jury are satisfied from that evidence, and from the testimony of Sheriff Manderbach and Mr. Baird, that Henninger, after the sale of his real estate on Bechtel's writ, had no property out of which the balance of the judgment could be col-

[Hoffman *v.* Bechtel.]

lected, then the defendant was liable on his guaranty,. and the plaintiff is entitled to a verdict. As the case stands, under the limitations to which the court have confined the evidence, the fact that due legal diligence was used by the plaintiff in issuing and prosecuting his process, is not contested."

The jury found for the plaintiff $1869.07.

The errors assigned were, the rejection of the evidence offered by the defendant and the charge of the court.

*John Banks* and *Jacob Hoffman* (plaintiff in error), for plaintiff in error.—The liability of defendant was contingent on the exercise of due diligence by the guarantee: Johnson *v.* Chapman, 3 Pa. R. 20; Rudy *v.* Wolf, 16 S. & R. 82; Overton *v.* Tracy, 14 Id. 327; Brown *v.* Brooks, 1 Cas. 312.

The error of the court below was in rejecting evidence to show negligence and bad faith in the guarantee: Stark *v.* Fuller, 6 Wright 323; Shippen's Administrator *v.* Clapp, 12 Casey 95. The jury are to pass on the *conduct* of the guarantee, to ascertain whether due diligence or reasonable and ordinary care was used: Kirkpatrick *v.* White, 5 Casey 177; Wetsel *v.* Spinster, 6 Harris 463; Rodgers *v.* Stophel, 8 Casey 112; Gilbert *v.* Henck, 6 Id. 209; Kemmerer *v.* Wilson, 7 Id. 113; 2 Am. L. Cases 127; Bacon's Ab., *Executors and Administrators, Devastavit.*

The plaintiff, to establish the indispensable requisite, insolvency of the debtor, proved that his property, real and personal, sold for about $650; he also proved that the plaintiff and the debtor's wife purchased nearly the whole of both. To rebut this the defendant's offer should have been received to show that the debtor's property was worth $4000, and therefore he was not insolvent; and also that the sale was fraudulent: Ricketts *v.* Unangst, 3 Harris 90; McMichael *v.* McDermott, 5 Id. 353; Klopp *v.* Whitmeyer, 7 Wright 219. Without showing the *value* of the property, the fraudulency of the sale could not be shown. So the conduct of the plaintiff about and after the sale were evidence on the question of fraud.

*G. G. Barclay,* for defendant in error.—Under the plea of "covenants performed," an equitable defence cannot be introduced without notice of special matter: Ellmaker *v.* Franklin Insurance Co., 5 Barr 183; Wright *v.* Smith, 4 W. & S. 526. No fraud is alleged in the notice of special matter. It is not enough to state facts in the notice: Clark *v.* Partridge, 2 Barr 15. The ground of defence must be specially stated: Thomas *v.* Mann, 4 Casey 522; Hale *v.* Fenn, 3 W. & S. 364; Moatz *v.* Knox, 1 Jones 270; Graff *v.* Graff, 14 S. & R. 184. The errors do not allege fraud. Bechtel was not bound to attend the sale. Hoffman was as

[Hoffman *v.* Bechtel.]

much bound to attend as he. Hoffman's liability was contingent on Henninger's insolvency and Bechtel's due diligence. The insolvency was undisputed. Want of due diligence is said to arise from Bechtel neglecting to attend the sale. Must he come with information to be obtained with great expense, and neglect interests at home for the purpose ? Must he bid ? and, if so, on whose judgment, his own or others ? If not, what is the use of attending the sale ? He may not be able to buy. Or it might compel him to take the land for his debt, which is contrary to the stipulation in the covenant. The guarantor cannot require the guarantee to take land instead of money. His interference at the sale might have discharged the obligation of the guarantor. The same result might have arisen from an interference to set aside the sale, without request, for that might have worked injury to the guarantor. Hoffman should have paid the debt and thus become the creditor of Henninger; he could then have interfered to set aside the sale. The law requires no greater diligence in a guarantee than the ordinary application of its process : Kirkpatrick *v.* White, 5 Casey 176; Gilbert *v.* Henck, 6 Id. 205; 4 Cowen 182. Mere delay will not of itself discharge : Stark *v.* Fuller, 6 Wright 323.

The opinion of the court was delivered, March 26th 1866, by
STRONG, J.—The contract of guaranty is peculiar. Unlike that of an ordinary surety, it is collateral and secondary. The creditor must resort in the first instance to the debtor, and the guarantor is liable only after the debtor has proved insolvent, and the creditor has used due diligence to obtain payment from him unsuccessfully. But what is due diligence ? Perhaps it is impossible to define it with any degree of certainty. It must vary with the circumstances of each case, and hence it is a question for the jury : Rudy *v.* Wolf, 16 S. & R. 79. It cannot be less than such as a vigilant creditor ordinarily employs to recover a debt for which he has no other security than the obligation of the debtor.

The guarantor has certainly a right to expect an honest, an intelligent effort of the creditor to obtain payment from the person primarily liable. Unless it be shown that legal process would have been fruitless, it is the creditor's duty to employ that process without unnecessary delay, and if he does, there is a legal presumption that he has been duly diligent. This is all that was decided in Kirkpatrick *v.* White, 5 Casey 176, and Gilbert *v.* Henck, 6 Id. 205. But this presumption is not a conclusive one. There may be cases in which something more may be due than simply suing out legal process, and letting it run its course. This is intimated in both the cases last referred to. In Kirkpatrick *v.*

2 P. F. SMITH—13

[Hoffman *v.* Bechtel.]

White, Judge Lowrie said, due diligence does not require the creditor to accompany the collecting officer and show him personal property, " *unless he has some special knowledge relating to it ;*" and in Gilbert *v.* Henck the same judge said that where the principal is not liable to a *ca. sa.*, and the plaintiff has issued a *fi. fa.*, and it is returned " *nulla bona,*" he has done all that the law requires of him in favour of the guarantor, " unless it be shown that the principal had property in some other county that was known to the plaintiff, or ought to have been, and that could be reached by ordinary execution process." Here is a clear recognition of a duty resting upon the creditor, holding a guaranty of a third person, to do more in some cases than employ legal process against the debtor, and let it run its undisturbed course. He may often know that the debtor has tangible property quite sufficient to satisfy the debt, which the sheriff without his aid cannot discover. Surely, due diligence in such circumstances requires him to do more than put an execution into the hands of the officer of the law. No jury would doubt that vigilant creditors would do more, if they had no surety or guarantor for the debt. It is not then to be taken as an universal rule that a creditor has done his whole duty to one who had guarantied the debt to him, when he has sued out legal process against the debtor, and placed it in the hands of the proper officer. The most that can be claimed for it is, that it makes a *primâ facie* case of due diligence, which may be overcome by proof of want of good faith in the creditor, and by proof that the failure to recover from the debtor was in consequence of the creditor's neglect to do what other prudent creditors in like circumstances would ordinarily have done : Brown *v.* Brooks, 1 Casey 210 ; Overton *v.* Tracey, 14 S. & R. 327.

These principles lead to the conclusion that the court below fell into error in rejecting some of the evidence offered by the defendant. The offer, which we think should have been received, was evidence to prove that the debtor was the owner of a lot and two houses thereon, worth $2500, upon which the judgment entered on the bond guarantied by the defendant was a lien, that the lot was subject to prior encumbrances, amounting to about $900 ; that under the execution issued by the plaintiff the lot was sold for $70 to the wife of the debtor ; that the plaintiff paid no attention to the sale, absented himself from it ; that after the sale was made he came to the place, and remarked that he did not care, as he was secured for his claim ; that he made no effort to have the sale set aside and a resale ordered, and that he privately offered to the purchaser an advance on his bid, if the purchaser would transfer the bid to him. We must, of course, now assume that all this could have been proved, and that it would have been, had the court allowed the evidence to be given. The question to be answered, then, is, would it have tended to show want of good

[Hoffman v. Bechtel.]

faith to the guarantor or failure to use that diligence in collecting the debt from Henninger the debtor, which prudent creditors ordinarily exert in collecting debts due to them ? We think it would, and that it should have been submitted to the jury for them to find whether it was sufficient to overcome the *primâ facie* case made out by the plaintiff. We do not assert that it is the duty of a creditor, to whom a guaranty has been given to attend the sheriff's sale of his debtor's property, and there bid upon it. Generally it is not. But there is much more in this case. All the facts are to be considered, and considered as bearing upon each other. The declaration of the plaintiff, the private offer to take the bid, the fact that the wife of the defendant was the purchaser, that the property sold for less than one-twentieth of its value, and that the plaintiff refused to apply to the court to set aside the sheriff's sale ; all are more or less significant. It must be left to a jury to say whether they show that the plaintiff failed to use with good faith that diligence in collecting the debt from Henninger which prudent creditors ordinarily employ. If they do show that, they will avail for the defendant.

The other assignments of error are not sustained. The mere fact that the personal property was worth much more than it brought at the sheriff's sale was of no importance in itself, and the charge given to the jury upon the facts in evidence was entirely accurate. But for the first reason we have mentioned, a new *venire* must be ordered.

Judgment reversed, and a *venire de novo* awarded.