## Woods *versus* Sherman *et al.*

1. Davis was indebted to Sherman for printing; he refused to do more without a guaranty. Woods agreed to "guaranty to Sherman the contract made by him with Davis to the amount of $10,000." Afterwards, Davis paid money to Sherman, without directing any appropriation. *Held,* that Sherman might apply it to the debt due before the guaranty.

2. To recover against a guarantor, the creditor must prove due diligence against the debtor or his insolvency, so that pursuit would be fruitless. He need not prove both.

3. An execution was issued against the debtor, suit was brought against the guarantor; two days afterwards the execution was returned "*nulla bona.*" *Held,* primâ facie evidence of due diligence.

4. Reasonable diligence is a question for the jury.

5. *Ex vi termini* a guaranty of a contract is a concurrent act and part of the original agreement.

6. Reigart *v.* White, 2 P. F. Smith 438, followed.

February 20th 1872. Before AGNEW, SHARSWOOD and WILLIAMS, JJ. THOMPSON, C. J., at Nisi Prius.

Error to the District Court of *Philadelphia:* No. 98, to July Term 1871.

This was an action of assumpsit, brought November 7th 1870, by Roger Sherman and others, trading as Sherman & Co., against Thomas Woods.

The declaration was that the defendant guarantied to the plaintiffs the payment for printing books for Davis & Woods; that they proceeded to execute the work for Davis & Woods; that there were due to the plaintiffs $14,000, for which judgment had been obtained and execution issued, but nothing realized. There was no further averment that the plaintiffs had complied with their contract.

On the trial the plaintiffs offered in evidence the following paper :

"Philadelphia, July 11th 1868.

I do hereby guarantee to Sherman & Co., the payment of contract made by them with Davis & Woods, to the amount of ten thousand dollars.          THOMAS WOODS."

The defendant objected to its admission because no consideration was stated in it. The court admitted the paper, and sealed a bill of exceptions.

Sherman, one of the plaintiffs, testified that at the time the paper was executed, they had printed "Davis' Astronomy" to the amount of $3550.68, for Davis & Woods, or Professor Davis; Davis & Woods wanted a new edition, which plaintiffs refused to print without a guaranty; shortly afterwards the defendant in company with Davis & Woods came with the guaranty. In consideration of the agreement plaintiffs consented to print another edition. The work done under Davis & Woods's order amounted to $13,200; in the fall of 1869, plaintiffs went to see Woods about the pay-

[Woods *v.* Sherman.]

ments; he said : " You have earned your money and ought to have it." Plaintiffs had received on account of the contract about $800; after the guaranty they had received $3070.95. Defendant was not told at the execution of the guaranty, that there was a balance due for old books, but he knew it: nothing was said about alterations. The books were in plaintiffs' possession; they frequently offered to deliver them. Expensive alterations were made on the books after the guaranty; the alterations were necessary by discoveries in science and improvements, and for the success of the work : the books in plaintiffs' possession had all been sold by the sheriff; the defendant was present at the sale: Davis & Woods said they could not pay.

The plaintiffs offered in evidence an execution issued by plaintiffs against Davis & Woods on a judgment for $13,867.88, for their debt, to which the return was " *nulla bona.*" The defendant objected to the offer, it was admitted, and a bill of exceptions sealed.

The defendant gave evidence that Davis & Woods owned land in Forest county, Pennsylvania, and 5000 acres in Virginia.

Plaintiffs, in rebuttal, offered in evidence another execution at the suit of 'Sherman & Co., against Davis & Woods, to show the value of the goods in plaintiffs' hands, which had been sold by the sheriff; also testatum fi. fa. in the same case, with sheriff's return in each case.

The offers were objected to by defendant, admitted, and several bills of exception sealed.

Sherman testified, under objection and exception, that he bought about fifteen thousand of the books at the sheriff's sale, and the defendant's attorney bought about one hundred.

The defendant's points were:

1. If the jury believe that they had no contract with Davis & Woods when the guaranty was made, and that their contract was not completed until the order of July 13th was given, two days afterwards, and no notice was given to Thomas Woods of said order, there can be no recovery in this case.

2. It not having been shown by the plaintiffs that they had brought suit against Davis & Woods for the breach of the *contract* guarantied by the defendant; or, that they had obtained any judgment thereon, and it being admitted that they had on hand undelivered and unsold the identical books, for the printing of which, it is alleged by the plaintiffs, the guaranty was given, on which this suit is brought, there can be no recovery in this case.

3. The books printed for Davis & Woods never having been delivered or taken out of the possession of Sherman & Co., they have a lien on them for the price, and if sold at sheriff's sale, whilst so in their possession, the purchaser at such sale would take subject to their lien for the unpaid price; and being still in their

[Woods *v.* Sherman.]

hands at the commencement of this suit, there can be no recovery in this case.

4. If Davis & Woods, or either of them, have property in Philadelphia, or in the state of Pennsylvania or elsewhere, liable to be seized and sold on an execution issued on a judgment obtained against them for the debt forming the subject-matter of the guaranty, and the property admitted by the plaintiffs to be in their hands is so liable, there can be no recovery in this case, and there can be no recovery against a guarantor until after the creditor shall have exhausted all the assets of the debtor.

5. This suit having been commenced on the 5th November 1870, and the execution offered in evidence for the purpose of proving the insolvency of Davis & Woods at that date, being returnable the first Monday of November 1870, which was the 7th day of November, two days subsequent to the commencement of this suit, its return of *nulla bona* affords no legal presumption of their insolvency.

6. The declaration, not averring that plaintiffs had complied with their *contract* with Davis & Woods, but alleging that they had executed certain work desired, &c., which at reasonable prices amounted to $14,000, and for which judgment had been obtained and execution issued, but nothing realized whereby, &c., &c., but of all which there is no evidence, and the proof failing to sustain the averments in the second count, the verdict must be for the defendant.

7. There being no allegation of insolvency made in the *narr.*, the jury must disregard and reject all proof on this point, and the verdict must be for the defendant.

8. If plaintiffs and Davis & Woods changed the work contracted for after the delivery of the order of July 13th, without the knowledge or consent of Thomas Woods, there can be no recovery in this case, and your verdict must be for the defendant.

9. Sherman & Co. having purchased 15,000 of the books covered by the guaranty, their so becoming possessed of Davis & Woods' title, subject to their own lien, their lien has become merged and extinguished, and they cannot recover, on the guaranty given for the debt, the lien of which is so extinguished.

In answer to the defendant's 3d point the court charged: "The omission of the plaintiffs to sell before the commencement of this suit the property of Davis & Woods in their possession, though technically an irregularity, is immaterial, inasmuch as the value of this property has been ascertained by the proper test of a sheriff's sale; and the proceeds of this it is also the right of the plaintiffs to appropriate to that portion of the debt of Davis & Woods not guarantied by the defendant; that is to say, the portion above $10,000. The fact that the copies of the books which were in the plaintiffs' possession, and which had been printed

[Woods *v.* Sherman.]

for Davis & Woods, were not sold by the sheriff until after the commencement of this suit, constituted no defence to this action."

The court refused defendant's 4th point and added: "The plaintiffs must show that they have used all reasonable diligence to compel payment by Davis & Woods. If they have done so and failed, then they have a just claim against the defendant for what may be owing to them under the guarantied contract."

In answer to the defendant's 7th point, the court charged: "If the jury find indebtedness of Davis & Woods to plaintiffs, arising out of this transaction, to the amount of $10,000 or more, which they had been unable to recover from Davis & Woods, by due diligence, then the verdict should be for plaintiffs for $10,000, with interest from the commencement of this suit. That if they found that Davis & Woods are indebted to the plaintiffs to the amount of $10,000 for work done under the contract guarantied, and which the plaintiffs have been unable by due diligence to compel Davis & Woods to pay them, their verdict should be for the plaintiffs for that amount, with interest."

The court refused all the other points of the defendant; and further charged : * * * " If no appropriation was made by Davis & Woods, the plaintiffs might appropriate the money paid by them to the first work which they had done; * * * The fact that the copies of the books which were in the plaintiffs' possession, and which had been printed for Davis & Woods, were not sold by the sheriff until after the commencement of this suit, constituted no defence to this action. * * * The pursuit of Davis & Woods by the plaintiffs obtaining judgment against them and issuing execution, and the testimony of Mr. Sherman, if believed by the jury, constitute sufficient evidence of diligence on the part of the plaintiffs in their efforts to compel the payment of the debt by Davis & Woods. * * * It is no defence to this action, that Davis & Woods may have had other property if the plaintiffs did not know that fact. * * * If the jury find that Davis & Woods are indebted to the plaintiffs to the amount of $10,000 for work done under the contract guarantied, which the plaintiffs have been unable by due diligence to compel Davis & Woods to pay them, their verdict should be for the plaintiffs for that amount, with interest. * * *

"The plaintiffs must show that they have used all reasonable diligence to compel payment by Davis & Woods. If they have done so and failed, then they have a just claim against the defendants for what may be owing to them under the guarantied contract. * * * [If where the payments were made by Davis & Woods, they were not appropriated either by Davis & Woods or the plaintiffs to any particular account, then the jury might appropriate them to the oldest indebtedness, and the guaranty applied, if the jury believed the evidence, only to the work which was done subsequent to the contract of guaranty."]

The verdict was for the plaintiffs for $10,296.66.

The defendant took out a writ of error and assigned for error the admission of plaintiffs' offers of evidence : the answer to the points and the part of the charge in brackets, which was the 12th assignment.

*G. S. Selden*, for plaintiff in error.

*T. H. Speakman*, for the defendant in error.

The opinion of the court was delivered, May 13th 1872, by

SHARSWOOD, J.—It is not necessary to consider the question which has been raised, whether the instrument of writing dated July 11th 1868, was a contract of guaranty or suretyship. The distinction between these two kinds of contract, is drawn with great precision by our brother Agnew, in the opinion of this court, delivered by him in Reigart *v.* White, 2 P. F. Smith 440 : " a contract of suretyship being a direct liability to the creditor, for the act to be performed by the debtor, and a guaranty being a liability only for his ability to perform this act. In the former, the surety assumes to perform the contract of the principal debtor, if he should not, and in the latter, the guarantor undertakes that his principal can perform ; that he is able to do so. From the nature of the former, the undertaking is immediate and direct, that the act shall be done, which, if not done, makes the surety responsible at once, but from the nature of the latter, non-ability (in other words, insolvency) must be shown." If we substitute any other word in the paper in question for the word "guarantee"—as "promise, agree or undertake," there can be no doubt that the writing would import an absolute and direct engagement for the payment of the contract. In Johnston *v.* Chapman, 3 Penn. Rep. 18, it was held that the legal import of the term " guarantee," is a promise to answer for the payment of some debt, or the performance of some duty, in case of the failure of another person, who in the first instance is liable : and that decision was followed in Isett *v.* Hoge, 2 Watts 128. In Sherman *v.* Roberts, 1 Grant's Cases 261, however, the word guarantee was held to have been used in its popular and not its technical sense—a sense, it may be remarked, which very few laymen know or consider in making contracts of this kind. The leaning of this court of late years has, therefore, very properly been against construing such contracts to be general guarantees : Amsbaugh *v.* Gearhart, 1 Jones 482 ; Marberger *v.* Pott, 4 Harris 9 ; Campbell *v.* Baker, 10 Wright 243 ; Allen *v.* Hubert, 13 Id. 259 ; Reigart *v.* White, 2 P. F. Smith 438. The case here, however, was evidently tried below on the assumption that it was a contract of general guaranty, and considered in that light, we are unable to perceive that any error was committed by the learned judge, of which the plaintiff has any right to complain. The creditor, in order to recover against a technical guarantor, must prove due diligence against the principal debtor, or excuse

[Woods v. Sherman.]

himself by showing his insolvency, so that such pursuit would be fruitless. But it is not necessary that he should prove both. The question of reasonable diligence was one of fact for the jury, and was fairly submitted to them. It was not necessary that the return of *nulla bona* should have been made before the commencement of the action. Whenever made it showed primâ facie due diligence. This disposes of most of the assignments of error. The third assignment assumes, that a contract cannot be made to guaranty a future contract—and although the words here are in the past tense, the circumstances clearly evince that its reference was to the contract about to be made or in contemplation. It was for the jury to say, whether the whole was not one cotemporaneous agreement, and if so, no notice to Thomas Woods was required. A guaranty of a contract implies, *ex vi termini*, that it was a concurrent act, and part of the original agreement: Snevily *v.* Johnston, 1 W. & S. 307; Unangst *v.* Hibler, 2 Casey 150. Nor can we say that the learned judge was wrong in declining to instruct the jury as requested in the defendant's eighth point, that he was discharged by the alterations made in the work. The only evidence of the contract, was in the testimony of Roger Sherman, that Sherman & Co. were to print a new edition of a certain work for Davis & Woods. · He was not asked what the agreement or understanding was as to alterations. It was certainly incumbent on the defendant to show that there had been a change in the contract, in order to avail himself of the defence. Scarcely any work passes through the press under the supervision of the author, without some alteration, more or less. The presumption certainly would be very strong in favor of such a right having been expressly or impliedly reserved. It was in evidence that the alterations were rendered necessary by discoveries in science and improvements. The learned judge was not asked to submit to the jury the question, whether there had been any change in the contract for printing the work without the consent of the defendant. On the contrary, he was requested to instruct them peremptorily, that if such changes had been made in the work, without the knowledge or consent of Thomas Woods, there could be no recovery. Neither can the learned judge be convicted of error because he did not charge the jury that they should credit certain items as complained of in the twelfth assignment: for the reason that he was not asked so to charge, nor was his attention directed by any point presented, to the consideration of the only construction of the contract, which would have justified such an instruction: namely, that the engagement of Thomas Woods, was for $10,000 of the contract, and not for any liability of Davis & Woods beyond that sum. Whether this was its true construction, or whether the $10,000 was merely the limit or extent of the liability of Thomas Woods under the contract, is a question which we do not feel called on to decide.

Judgment affirmed.