[National Loan and Building Society *v.* Lichtenwalner.]

the widow, it will be unnecessary to apply one rule for the parent in measuring damages, where the son was single at the time of his death, and another where he was married.

As the plaintiff had no right of action the fifth and eighth assignments need not be remarked.

Judgment reversed.

# National Loan and Building Association *versus* Lichtenwalner.

1. In order to enable a creditor to enforce a contract of guarantee, he must exercise due diligence to enforce payment from the principal.

2. As a general rule the creditor is bound in such case to bring suit within a reasonable time after the maturity of the claim, and duly to prosecute the same to judgment and execution, before an action can be sustained against the guarantor, unless it appears that such proceedings could have produced no beneficial results.

3. Where the principal debtor is a corporation which has become insolvent, and made an assignment for the benefit of its creditors, the creditor is not bound before having resort to the guarantor to enforce the individual liability of the stockholders of the corporation to creditors under the terms of the charter.

4. A creditor, in order to hold a guarantor, may be obliged to exhaust all the property and securities immediately within his grasp, even to such as may be held as collateral, but he is not obliged to pursue every claim which the debtor may have, especially where such claim is contingent and uncertain, and of a character to involve great delay and expense to the creditor.

March 9th 1882. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Error to the Court of Common Pleas of *Lehigh county :* Of January Term 1882, No 176.

Assumpsit, by the National Loan and Building Association against Charles Lichtenwalner, upon this contract :—

"I hereby guarantee the payment of the within certificate.

"April 24, 1877.　　　Charles Lichtenwalner."

This was indorsed upon a certificate of deposit for $500. issued by the Franklin Savings Bank to the order of Charles Lichtenwalner, dated June 10th 1876, payable six months after date ; which certificate, so endorsed, Lichtenwalner on April 24th 1877, transferred for value to the National Loan and Building Association, plaintiff.

On the trial, before Albright, P. J., the following facts appeared :—The Franklin Savings Bank was incorporated under

the Act of February 9th 1870, P. L. 118, and its charter provides, inter alia :

"Sec. 11. That the stockholders shall be personally liable to the depositors in double the amount of the capital stock of this bank."

The plaintiff proved that the Franklin Savings Bank practically suspended payment in the Spring or Summer of 1877 ; that repeated demands of payment of the certificate were made and refused (except as to the payment of $147.42, on account) and that the bank made an assignment for the benefit of its creditors January 17th 1878. Evidence was given tending to show that the bank was insolvent on April 24th 1877, when the plaintiff received the certificate ; that plaintiff put the certificate in the hands of its counsel for collection, the attorney for the bank and for the building association being the same person ; this attorney testified that he had full knowledge of the affairs of the bank, and that it had no assets or property of any kind that could have . been reached by process of law, had suit been brought upon said certificate, and therefore no suit was brought against the bank.

The defendant proved that 2500 shares of stock had been issued by the bank, of the par value of $20 each, on which only $4 or $5 had been paid in by the holders, and contended that the liability of the stockholders or of many of them could have been enforced for the amounts of their unpaid subscriptions, and for their double liability under section 11 of the charter, but that the plaintiff took no action towards causing such liability to be enforced before bringing this suit on the contract of guarantee.

The plaintiff presented, inter alia, the following points :

2. If the condition of the Franklin Savings Bank on April 24th 1877, and immediately thereafter, was such that the debt in suit could not have been collected by a diligent and faithful use of the ordinary processes of law, the plaintiff is entitled to recover. Answer.—If it could not have been collected by process against the bank and its stockholders as stated in the general charge, then the plaintiff is entitled to recover. With this explanation the point is affirmed.

3. It was not incumbent upon the plaintiff to proceed against the stockholders of the bank to enforce their secondary liability to the depositors of the bank, under the provisions of the charter. Answer.—This is negatived.

The defendant presented, inter alia, this point :

2. Before the plaintiff in this case can recover, it must prove to your satisfaction that it used due diligence to collect the money from the Franklin Savings Bank, its stockholders or

debtors; or that the money could not have been collected by legal process if it had tried.    Answer.—This *is* affirmed.

The court charged the jury, inter alia: " The court is of the opinion that if the employment of process, such as the law gave to the holder of this certificate, including the enforcement of the liability of the stockholders to the depositors, would have resulted in obtaining satisfaction of the claim, the defendant is not liable under his guarantee.

" And if it appears that legal proceedings against the bank and the enforcement of the liability of the stockholders would have resulted in securing payment of the claim—the certificate guaranteed—the plaintiff cannot recover; but if it is shown that by resorting to all the remedies which the law gave it, and by enforcing its rights with that diligence which a prudent creditor would exercise if only the bank and the stockholders were liable, the plaintiff could not have obtained satisfaction on the certificate, the plaintiff is entitled to recover from the defendant."

Verdict for the defendant, and judgment thereon.    The plaintiff took this writ of error, assigning for error, inter alia, the answers to plaintiff's and defendant's points, as above, and the portion of the charge quoted.  .

*R. E. Wright & Son* (*T. B. Metzger* with them), for plaintiff in error.—In order to hold a guarantor the creditor need only prove that he has exercised due diligence in resorting to the ordinary processes of law for the collection of the debt, or that a resort to such processes would have been fruitless.    He is not bound to resort to unusual or extraordinary process to compel a general sequestration of all the promissor's estate for the benefit of all his creditors, to pursue him through bankruptcy and then to institute like proceedings against other persons and other estates to the end that the aggregate dividends finally realized may pay his debt:    Gilbert *v.* Henck, 6 Casey 208;    Kirkpatrick *v.* White, 5 Casey 177;    Janes *v.* Scott, 9 P. F. S. 182.    Where the stockholders of a bank are liable under an act of incorporation for an amount equal to the stock subscriptions, their liability is not that of sureties but is special and sub modo only, it only accrues where the assets of the banks are exhausted.    Neither can it be enforced except by a judicial decree first obtained:    Craig's Appeal, 11 Norris 397;    Mean's Appeal, 4 Norris 75;    Patterson *v.* Wyomissing Mfg. Co., 4 Wright 17.

We submit that the court erred in holding that this plaintiff must pursue to a conclusion all these complicated, expensive and extraordinary processes, or prove them fruitless before his contract could avail him.

[National Loan and Building Society *v.* Lichtenwalner.]

*James S. Biery* (*Stiles & Son* with him), for the defendant in error.—The certificate was overdue when it was transferred and guaranteed. The plaintiff contented himself with simply demanding payment of the bank, without bringing suit. To excuse this want of due diligence he relies on the alleged insolvency of the bank, but the evidence was far below the standard required to be shown to excuse a resort to legal process in such case. The proof must show clearly that the principal "was so utterly insolvent as not to make it worth while to sue him:" McClurg *v.* Fryer, 3 Har. 295. The bank continued to do business until the assignment in January 1878, and a part of this very claim, and other claims, were paid without suit.

The only way to test insolvency was by proceedings under the Banking Act of April 16, 1850, P. L. 477: Wright *v.* Davenport, 16 P. F. S. 148. Not only could prior dividends paid to stockholders have been recovered as assets of the bank for creditors (Stang's Appeal, 10 W. N. C. 409), but the liability of stockholders for unpaid balances of subscriptions, and their extra liability under the charter, should have been enforced by appropriate proceedings set in motion by the plaintiff, before he resorted to the defendant as guarantor; and the plaintiff having failed to take such action the guarantor is not liable in this action: Ogilvie *v.* Ins. Co., 22 Howard 380; Stang's Appeal, 10 W. N. C. 409; Marsh *v.* Borroughs, 1 Woods 463; Briggs *v.* Penniman, 8 Cowen 386; Gratz *v.* Redd, 4 B. Monroe 178; Norris *v.* Johnson, 34 Maryland 485; Means's Appeal, 4 Norris 79. The fact that such liablity of stockholders is secondary or collateral does not relieve the plaintiff from the duty of pursuing it: Johnston *v.* Chapman, 3 P. & W. 20.

Mr Justice Paxson delivered the opinion of the court, March 20th 1882.

That this is a contract of guaranty is settled by abundant authority: Bank *v.* Haynes, 8 Pick 423; Curtis *v.* Brown, 2 Barb. 55; Isett *v.* Hoge, 2 Watts 128; Johnston *v.* Chapman, 3 Penna. R. 18; Hoffman *v.* Bechtel, 2. P. F. S. 190; Woods *v.* Sherman, 21 Id. 100. It is equally clear that such contract imposes upon the plaintiff the duty of exercising due diligence to enforce payment from the principal before resort can be had to the guarantor. Campbell *v.* Baker, 10 Wright 243; Reigart *v.* White, 2. P. F. S. 439; Hoffman *v.* Bechtel, Ibid. 190. What is due diligence? There are many cases upon this point, and the general tenor of them appears to be that the contract for due diligence requires that a suit be brought within a reasonable time after the maturity of the claim and be duly prosecuted to judgment and execution before an action can be sustained against the guarantor, unless it appears that such proceedings

could have produced no beneficial results. Brown *v.* Brooks, 1 Casey 210 ; Kirkpatrick *v.* White, 5 Id. 177; Gilbert *v.* Henck, 6 Id. 209, Overton *v.* Tracy, 14 S. & R. 327. And it must vary with the circumstances of each case, hence it is a question for the jury. Rudy *v.* Wolfe, 16 S. & R. 79. It may be stated as a general rule sustained by the authorities that the prompt prosecution of the claim against the debtor to judgment, the issuing of an execution and a return of nulla bona would be at least prima facie evidence of his insolvency, and of due diligence on the part of the creditor. So much was asserted in Hoffman *v.* Bechtel, a case much relied on by the present defendant in error, but the remark was qualified by the further suggestion that the suing out of process simply, and letting it run its course, might not be due diligence. We can readily understand how this may be the case. A return of nulla bona to an execution is prima facie evidence that the defendant has no goods. Yet it is not conclusive and is often untrue, while if true in point of fact the defendant may be the owner of valuable real estate.

Upon the trial below, the learned judge negatived the plaintiff's second and third points, which was practically instructing the jury that it was not enough for the plaintiff to exhaust his remedies against the bank, but must proceed against the stockholders to enforce their individual liability to depositors under the charter of the bank.

None of the authorities cited sustains this ruling. It may be, as was suggested in Johnston *v.* Chapman, supra, that where the creditor held a collateral security, as a mortgage, due diligence would require that he should exhaust the collateral before coming upon the guarantor. We have no such question here. The creditor held no collateral. Under the charter of the bank the stockholders were liable to depositors in double the amount of the stock, but their liability is not that of sureties, but is special and sub modo only. Craig's Appeal, 11 Norris, 398. It is therefore, secondary and not primary, collateral, and in the nature of a guaranty. Hence it does not accrue until the assets of the bank are exhausted. This bank had made an assignment for the benefit of its creditors. It is not necessary to consider the question whether the plaintiff could have sustained a suit against the stockholders in his own name without the intervention of the assignee, for the reason that as the liability of the stockholders was but secondary they could be sued only for the balance due to the plaintiff after the assets belonging to the bank had been distributed, or at least ascertained. A creditor in order to hold a guarantor may be obliged to exhaust all the property and securities immediately within his grasp, even to such as may be held as collateral, but we do not think he is obliged to pursue every claim which his debtor may have,

[Township of North Whitehall *v.* Keller.]

especially where such claim is contingent and uncertain, and of a character to involve great delay and expense to the creditor.

The plaintiff's second and third points should have been affirmed. What has been said sufficiently covers the remaining assignments.

Judgment reversed and a venire facias de novo awarded.