617 A.2d 354

**Nancy Marcum LANGSTON, Appellee,**

v.

**NATIONAL MEDIA CORPORATION and Media Arts International, Ltd., Appellants.**

Superior Court of Pennsylvania.

Argued Jan. 30, 1992.

Filed Nov. 20, 1992.

612

Mark L. Alderman, Philadelphia, for appellants.

Sheldon L. Albert, Philadelphia, for appellee.

Before CIRILLO, DEL SOLE and KELLY, JJ.

KELLY, Judge:

In this opinion we are called upon to determine, *inter alia*, whether the Uniform Arbitration Act, 42 Pa.C.S.A. § 7301 *et seq.* (the Arbitration Act) precludes a trial court from granting equitable relief in the nature of a preliminary injunction prior to a determination of whether the underlying dispute is, in

fact, arbitrable. We conclude that the Act does not abrogate the trial court's power to issue injunctive relief and affirm the order of the trial court awarding same against Media Arts International.

The relevant facts and procedural history are as follows. Appellee, Nancy Langston, was employed as president of appellant, Media Arts International (MAI). Appellant, National Media Corporation (NMC) is the corporate parent of MAI. Appellee's employment with appellant, MAI, was pursuant to a written employment agreement which, in relevant part, provided:

(d) In the event that the Executive disputes a determination that Cause exists for terminating her employment hereunder pursuant to paragraph 10(b), or Company disputes a determination that Good Reason exists for Executive's resignation of her Employment pursuant to paragraph 10(c)(2)(i), either party disputing such determination shall serve the other with written notice of such dispute ("Dispute Notice") within thirty (30) days after receipt of the Dismissal Notice or Notice of Resignation for Good Reason. Within fifteen (15) days thereafter, the Executive or the Company, as the case may be, shall, in accordance with the Rules of the American Arbitration Association (AAA), file a petition with the AAA for arbitration of the dispute, the costs thereof to be shared equally by the Executive and the Company unless an order of the AAA provides otherwise. *In the event the Executive serves a Dispute Notice upon the Company, an amount equal to the portion of the Base Salary Executive would be entitled to receive pursuant to 10(c)(1)(i) shall be placed by the Company in an interest-bearing escrow account mutually agreeable to the parties* or the Company shall deliver for the benefit of the Executive an irrevocable letter of credit containing terms, including those relating to the accrual of interest, mutually agreeable to the parties.

Employment Agreement, 12/17/90 at 18–19 (emphasis added).

In early September, 1991, a dispute arose as to whether appellee had voluntarily resigned her position as president of

MAI or whether she had been terminated. Appellee, believing she had been wrongfully terminated, commenced an arbitration proceeding by filing a demand for arbitration with the American Arbitration Association. When appellant, MAI, failed to place any money in escrow or pay its share of the administrative costs of arbitration, appellee sought a preliminary injunction directing both MAI and NMC, as parent corporation, to deposit in escrow that portion of her salary she would be entitled to pursuant to the Employment Agreement and pay their share of the arbitration administrative fees. Appellants answered the petition for a preliminary injunction raising the lack of an arbitrable issue as well as the absence of authority for the trial court to issue such an injunction in a matter subject to arbitration. A hearing was held thereafter, and the trial court subsequently issued an order granting appellee's petition for a preliminary injunction and directing appellants to deposit $872,812.00 in escrow along with paying one-half of the arbitration fee. This timely appeal followed.

On appeal appellants raise the following issues for our consideration:

1. WHETHER THE TRIAL COURT CORRECTLY GRANTED ANCILLARY INJUNCTIVE RELIEF IN AN ACTION BROUGHT UNDER THE PROVISIONS OF THE UNIFORM ARBITRATION ACT, WHICH IS A MANDATORY, EXCLUSIVE AND ADEQUATE STATUTORY REMEDY?

2. WHETHER THE TRIAL COURT CORRECTLY GRANTED RELIEF ANCILLARY TO THE UNDERLYING ARBITRATION WITHOUT COMPELLING ARBITRATION?

3. WHETHER THE TRIAL COURT ERRED BY CONCLUDING THAT APPELLEE HAD DEMONSTRATED A RIGHT TO ISSUANCE OF A PRELIMINARY INJUNCTION?

4. WHETHER THE TRIAL COURT PROPERLY ENTERED A MANDATORY PRELIMINARY INJUNCTION AGAINST APPELLANT NATIONAL MEDIA CORPORATION ("NMC"), WHO WAS NOT A PARTY

TO ANY ARBITRATION AGREEMENT BUT MERELY WAS GUARANTOR OF THE FINANCIAL OBLIGATIONS OF APPELLANT MEDIA ARTS INTERNATIONAL, LTD. ("MAI") UNDER THE CONTRACT AT ISSUE?

5. WHETHER THIS COURT SHOULD CONTINUE THE STAY OF THE INJUNCTION PENDING FINAL DISPOSITION OF THIS APPEAL?

Appellants' Brief at 2.

 Initially, appellants contend that the trial court erred in granting appellee injunctive relief because such relief is outside the scope of the trial court's authority pursuant to the Uniform Arbitration Act. 42 Pa.C.S.A. § 7301 *et seq.* According to appellants, appellee's sole avenue of relief was a petition to compel arbitration pursuant to the Employment Agreement. Accordingly, under the Arbitration Act, the court's only authority was to either compel or refuse to compel arbitration, depending on the court's decision as to the arbitrability of the underlying issue. Any other action by the trial court, such as the ancillary relief granted herein, is precluded by the Arbitration Act and is, therefore, improper.

Whether a trial court has subject matter jurisdiction to grant injunctive relief in a dispute subject to arbitration presents an issue of first impression in this Commonwealth. The trial court found guidance in the reasoning of the federal courts which have addressed this exact question under the Federal Arbitration Act. 9 U.S.C. §§ 1–16. In so doing, the court concluded that it did possess the power to grant injunctive relief pending the outcome of the arbitration proceedings. For the following reasons, we agree with the trial court that it possessed subject matter jurisdiction to issue the injunctive relief herein.

Recently, in *Dickler v. Shearson Lehman Hutton, Inc.,* 408 Pa.Super. 286, 596 A.2d 860 (1991), this Court was asked whether a claim for equitable relief was outside the parties' arbitration agreement and whether arbitrators are empowered to dispense equitable relief under the Arbitration Act. In concluding that arbitrators are empowered to dispense equita-

ble relief, this Court recognized that Pennsylvania, as a matter of public policy, had fallen in line with the federal authorities in its recognition and acceptance of arbitration as a necessary tool for relieving crowded dockets and ensuring the swift and orderly settlement of disputes. *Id.* at 293, 596 A.2d at 863–64; *see also Waddell v. Shriber,* 465 Pa. 20, 348 A.2d 96 (1975); *Elkins & Co. v. Suplee,* 371 Pa.Super. 570, 538 A.2d 883 (1988).

Looking to federal authorities for guidance on the instant question, we find that it is precisely this underlying recognition of the purpose for and necessity of arbitration which has influenced the federal circuit courts in finding authority in the federal district courts to issue injunctive relief prior to the determination of the arbitrability of the underlying dispute. Without such authority, the federal courts have concluded, the utility of arbitration as a vehicle for dispute resolution would be ultimately rendered asunder, as the underlying controversy is rendered moot.

For example, in *Teradyne v. Mostek Corp.,* 797 F.2d 43 (1st Cir.1986), the Court held that a district court had not erred in granting the plaintiff injunctive relief to insure that the defendant did not dispose of its assets which could satisfy a potential award. *Id.* at 47–51. This was so even though the underlying dispute had yet been declared arbitrable. The Court summarized the rationale for such a rule as follows:

[T]his approach reinforces rather than detracts from the policy of the Arbitration Act.... We believe that the congressional desire to enforce arbitration agreements would frequently be frustrated if the courts were precluded from issuing preliminary injunctive relief to preserve the status quo pending arbitration and, *ipso facto,* the meaningfulness of the arbitration process.

*Id.* at 51. Indeed, the Court concluded that arbitration would become a "hollow formality" if parties were able to irretrievably alter the status quo pending the outcome of the underlying dispute. *Id.*

In *Ortho Pharmaceutical Corp. v. Amgen, Inc.,* 882 F.2d 806 (1989), the Third Circuit fell into line with the overwhelming majority of the federal circuits in concluding that a district

court possessed the authority to grant injunctive relief in an arbitrable dispute. Therein the Court reasoned that because arbitration agreements generally reflected the parties' intention to abide by an orderly process of dispute resolution, it would be error to "construe such an agreement as constituting a 'waiver' by either party of the right to seek preliminary injunctive relief necessary to prevent one party from eviscerating the significance of the agreed-upon procedures." *Id.* at 812. *See also Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 910 F.2d 1049, 1051–1054 (2d Cir.1990); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley,* 756 F.2d 1048, 1052–1054 (4th Cir.1985); *Sauer–Getriebe KG v. White Hyraulics, Inc.,* 715 F.2d 348 (7th Cir.1983), *cert. denied,* 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214; *PMS Distributing Co., Inc. v. Huber & Suhner, A.G.,* 854 F.2d 355, 358 (9th Cir.1988) (citing *Teradyne, supra,* for holding that Federal Arbitration Act does not preclude district court from granting a writ of possession pending the outcome of arbitration); *Ferry–Morse Seed Co. v. Food Corn, Inc.,* 729 F.2d 589 (8th Cir.1984) (affirming the grant of preliminary injunctive relief in an arbitrable dispute); *but see Merrill Lynch, Pierce, Fenner & Smith v. Hovey,* 726 F.2d 1286, 1291–92 (8th Cir.1984) ("where the Arbitration Act is applicable and no qualifying contractual language has been alleged, the district court errs in granting injunctive relief"); *Korn v. Ambassador Homes, Inc.,* 546 So.2d 756, 757 (Fla.App. 3 Dist.1989).

We find the analysis of the federal courts particularly persuasive given the fact that the applicable provisions of both the Federal Arbitration Act, 9 U.S.C. §§ 3–4, and the Uniform Arbitration Act, 42 Pa.C.S.A. § 7304, are materially similar[1]

1. Compare 9 U.S.C. §§ 3–4, which in pertinent part provide

 § 3. If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the

and both the federal courts and courts of this Commonwealth favorably recognize the settlement of disputes by arbitration. Therefore, in recognition of the pro-arbitration policies reflected in the enactment of the Uniform Arbitration Act and case law of this Commonwealth, we hold that a trial court has authority to grant injunctive relief in an arbitrable dispute, even though the underlying dispute has not yet been declared arbitrable, provided the prerequisites for such relief are justified. Having so concluded, we must now determine whether the trial court properly issued the preliminary injunction in the case *sub judice.*

■ Appellants argue that even if the trial court possessed the authority to grant injunctive relief, such relief was inappropriate herein. Because appellee failed to establish that an

> agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.
>
> \* \* \* \* \* \*
>
> 4. A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. \* \* \*
>
> With 42 Pa.C.S.A. § 7304
>
> (a) **Compelling arbitration.**—On application to a court to compel arbitration made by a party showing an agreement described in section 7303 (relating to validity of agreement to arbitrate) and a showing that an opposing party refused to arbitrate, the court shall order the parties to proceed with arbitration. If the opposing party denies the existence of an agreement to arbitrate, the court shall proceed summarily to determine the issue so raised and shall order the parties to proceed with arbitration if it finds for the moving party. Otherwise, the application shall be denied.
>
> \* \* \* \* \* \*
>
> (d) **Stay of judicial proceedings.**—An action or proceeding, allegedly involving an issue subject to arbitration, shall be stayed if a court order to proceed with arbitration has been made or an application for such an order has been made under this section. If the issue allegedly subject to arbitration is severable, the stay of the court action or proceeding may be made with respect to the severable issue only. If the application for an order to proceed with arbitration is made in such action or proceeding and is granted, the court order to proceed with arbitration shall include a stay of the action or proceeding.

injunction was necessary to prevent irreparable harm, or that a greater injury would result if the petition was refused, or that it was necessary to maintain the status quo, appellants conclude the trial court erred in granting the injunctive relief requested. We cannot agree.

It is well settled that when reviewing an order entering a preliminary injunction, we examine the record only to determine if there were any reasonable grounds for the action of the trial court. *Three County Services, Inc. v. Philadelphia Inquirer,* 337 Pa.Super. 241, 245, 486 A.2d 997, 999 (1985). We will not inquire into the merits of the underlying controversy. *Id.* "Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was misapplied will we interfere with the decision of the chancellor." *Coatesville Development Co. v. United Ford and Commercial Workers, AFL–CIO,* 374 Pa.Super. 330, 337–38, 542 A.2d 1380, 1384 (1988) (*en banc*). Moreover, the purpose of a preliminary injunction is to "preserve the status quo as it exists or existed before the acts of which the plaintiff complains." *Churchill Corporation v. Third Century, Inc.,* 396 Pa.Super. 314, 328, 578 A.2d 532, 539 (1990). In order to be granted a preliminary injunction, a plaintiff must prove that the injunction is necessary to prevent an irreparable harm, the right to relief is clear, and the need for relief is immediate. *Id.* If issued, the preliminary injunction should be no broader than necessary for the plaintiff's interim protection. *Three County Services, supra,* 337 Pa.Super. at 246, 486 A.2d at 1000.

The trial court found that appellee's right to equitable relief was clearly provided for in the employment contract with MAI. The express provision in the Employment Agreement required MAI, upon appellee's petition to compel arbitration, to deposit in escrow an amount equal to the base portion of appellee's salary while the underlying dispute is adjudicated.[2] The court concluded that

2. *In the event the Executive serves a Dispute Notice upon the Company, an amount equal to the portion of the Base Salary Executive would be entitled to receive pursuant to 10(c)(1)(i) shall be placed by the Company*

[t]he parties consented to such a preliminary remedy in order to protect Langston's interest prior to adjudication, whether by arbitration or in a court of law. To now decide that she has only a legal remedy to recover the money would run counter to the intent of the contracting parties, expressed in their agreement, to give her such equitable relief, pending the resolution of her underlying claim. To rule otherwise would render the escrow clause a nullity.

Trial Court Opinion at 6. We agree with the trial court that appellee was entitled to an injunction against MAI, requiring MAI to comply with the specific provisions of the employment contract.

■ However, that portion of the injunction relating to NMC must be vacated. NMC was not a party to the arbitration provisions of the contract. Moreover, while NMC is a guarantor under the terms of the contract, *see* Employment Agreement, 12/17/90 at 13, MAI has not yet defaulted on its obligation to deposit the required funds in escrow under the terms of the contract. Accordingly, NMC's obligation as guarantor has not yet arisen, and as such, the order imposing an injunction against NMC must be vacated. *See National Loan and Building Ass'n v. Lichtenwalner*, 100 Pa. 100 (1882); *Woods v. Sherman*, 71 Pa. 100 (1872); *Hoffman v. Bechtel*, 52 Pa. 190 (1866) (a contract of guaranty is only a contingent one, which becomes absolute, by due and unsuccessful diligence to obtain satisfaction from the principal, or by circumstances that excuse diligence). *See also Atlantic Corporation v. Ohio Valley Provision Co.*, 489 Pa. 389, 414 A.2d 123 (1980); *Pennsylvania House, Inc. v. Barrett*, 760 F.Supp. 439 (M.D.Pa.1991).

From the foregoing we hold that a trial court possesses the authority to issue injunctive relief in an arbitrable dispute and that the injunction in the instant case was properly issued against MAI. Accordingly, we affirm the order of the trial

*in an interest-bearing escrow account mutually agreeable to the parties* or the Company shall deliver for the benefit of the Executive an irrevocable letter of credit containing terms, including those relating to the accrual of interest, mutually agreeable to the parties.
Employment Agreement, 12/17/90 at 18–19 (emphasis added).

court directing appellant MAI, to place $872,812.00 in escrow and pay one-half the administrative costs of arbitration.[3]

Order Affirmed in part, and Vacated in part. Jurisdiction relinquished.

CIRILLO, J., filed a concurring and dissenting opinion.

CIRILLO, Judge, concurring and dissenting.

I agree with the majority's conclusion that pursuant to the underlying policies of common law arbitration, 42 Pa.C.S.A. § 7341, and the case law of this Commonwealth, a trial court has authority to grant injunctive relief pending the determination of arbitrability. However, I dissent from that portion of the opinion which affirms the trial court's grant of a preliminary injunction against MAI. Although the majority correctly vacated the portion of the injunction relating to NMC, I find that Langston failed to carry her burden of proof for an award of injunctive relief as to both NMC and MAI. *Three County Services, Inc., supra.*

Although a trial court possesses the authority to grant injunctive relief in an arbitrable dispute, even though the underlying dispute has not yet been declared arbitrable, the prerequisites for injunctive relief must still be met. In order to grant a preliminary injunction, the plaintiff must prove that the injunction is necessary to prevent an irreparable harm, the right to relief is clear, and the need for relief is immediate. *Churchill Corp. v. Third Century, Inc.,* 396 Pa.Super. 314, 328, 578 A.2d 532, 539 (1990). In addition, the plaintiff must show that greater injury will result from refusing the injunction than in granting it. *Hospital Association of Pennsylvania v. Commonwealth Dept. of Public Welfare,* 495 Pa. 225, 433 A.2d 450 (1981). The requisites for a preliminary injunction are cumulative; thus, if one element is lacking, relief may not be

3. We note that the express provisions of this Court's January 9, 1992 Order staying the injunction pending appeal provided that the stay was in effect only until January 30, 1992. Our review of the record reveals no indication that appellants sought an additional stay of the injunction. Hence, the stay expired by the express provisions of this Court's order on January 30, 1992.

granted. *Leonard v. Thornburgh,* 75 Pa.Commw. 553, 463 A.2d 77 (1983).

The majority reasons that Langston's right to equitable relief was clearly provided for in the employment contract with MAI. I disagree. Langston did not demonstrate that she had a clear right to relief. *Churchill, supra.* Pursuant to the employment contract between Langston and MAI, Langston could demand arbitration only when there existed a dispute over the "termination" of her employment. The majority, in line with the trial court's decision, holds that this language provides her with a right to equitable relief. To the contrary, the preponderance of the evidence at trial did not demonstrate such a clear right to relief. There was no evidence put forth that MAI or NMC terminated Langston; rather, most of the evidence indicates that she had voluntarily resigned.[1] Since Langston was not "terminated," she possessed no contractual right to demand arbitration in the first instance, let alone the right to compel NMC and/or MAI to escrow funds or share arbitration fees. It is my belief, therefore, that Langston did not show a clear right to relief.

Even though the Pennsylvania Supreme Court has stated that the "clear right" requirement is not intended to mandate that one seeking a preliminary injunction establish his or her claim absolutely, a plaintiff must still show that there is a threat of immediate and irreparable harm, and that the injunction would do no more than to restore the status quo. *Fischer v. Dept. of Public Welfare,* 497 Pa. 267, 270–271, 439 A.2d 1172, 1174 (1982). Langston failed to demonstrate that she suffered any potential or immediate irreparable harm that could not be remedied later through monetary damages.

1. Langston had threatened to resign three times in eleven months, including when she sought renegotiation of the employment agreement at issue. No one from MAI or NMC ever informed Langston that she had been terminated. Additionally, Mr. Turchi, Chairman and Chief Executive Officer of NMC, requested that Langston call him to discuss matters. The next day, however, Langston called her attorney at 6:30 a.m. without calling Mr. Turchi or any other representatives of MAI or NMC. After hearing nothing from Langston, MAI and NMC believed that she intended to resign and, therefore, sent her a confirmatory letter.

Langston claimed that the injunction was necessary to prevent harm that could not be compensated by damages because of the alleged financial stress to NMC as a result of federal court litigation brought against it. She feared that an adverse result in the federal action would prevent her from collecting a possible judgment or award.

This contention is both factually and legally erroneous. NMC was not a party to the arbitration provisions of the contract; rather, NMC was merely a signatory to the employment agreement. MAI is, therefore, the only party that possessed financial obligations under the arbitration provision of the employment contract. Moreover, since MAI was *not* a party to the federal lawsuit instituted against NMC, there was no evidence offered that MAI's ability to comply with its alleged contractual obligations to Langston would be adversely affected by a ruling against NMC in the federal action.

Similarly, neither NMC's nor MAI's present or potential financial difficulties constitute a basis for injunctive relief. Our supreme court has held that:

> *The insolvency of a defendant does not create a situation where there is no adequate remedy at law.* In deciding whether a remedy is adequate, it is the remedy itself, and not its possible lack of success that is the determining factor … *The fact,* if it be so, *that this remedy may not be successful in realizing the fruits of a recovery at law,* on account of the insolvency of the defendants, *is not of itself a ground of equitable relief.*

*Willing v. Mazzocone,* 482 Pa. 377, 382–383, 393 A.2d 1155, 1158 (1978) (emphasis added). *See also In Re Estate of King,* 183 Pa.Super. 190, 194–196, 130 A.2d 245, 248 (1957) (court of equity may not be used to recover a money judgment upon the "blanket allegation" of insolvency of defendant). Therefore, even with proof of insolvency, I would find that the trial court incorrectly determined that Langston had proven immediate and irreparable harm since insolvency is not a ground for equitable relief. *Willing, supra.*

Langston has also failed to show that she will incur greater injury by refusal of the injunction than MAI and NMC would

incur were it granted. MAI and NMC will sustain great injury if a stay of the injunction is not granted. Their businesses are cash-intensive; both companies purchase media time and new products for retail sale. Therefore, forcing them to escrow approximately one million dollars pending the outcome of this litigation will tremendously burden business operations. Conversely, Langston has suffered no harm if funds are not placed in escrow. She may maintain an action for breach of contract to redress any alleged breaches of her employment contract. Moreover, injunctive relief is not normally available in cases involving employment contract disputes; damage awards are deemed adequate to compensate for losses that result from breaches of contract. *Novak v. Commonwealth,* 514 Pa. 190, 523 A.2d 318 (1987).

I conclude that the trial court had no reasonable grounds for granting the preliminary injunctions against either, MAI or NMC. *Three County Services, Inc., supra.* I would, therefore, grant the request for stay of the injunction.