**PRECISION POLYMERS, INC., Plaintiff,**

v.

**PILLAR INDUSTRIAL PRODUCTS CORP., Robintech Incorporated and Plastiline, Inc., Defendants.**

**Civ. A. No. 77–464.**

United States District Court, W. D. Pennsylvania.

June 22, 1977.

Paul H. Titus, Bernard D. Marcus, Kaufman & Harris, Pittsburgh, Pa., for plaintiff.

John H. Morgan, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for Robintech, Inc. and Plastiline, Inc.

Robert H. Stevenson, Anderson, Moreland & Bush, Pittsburgh, Pa., for Pillar Indus. Products.

## OPINION

TEITELBAUM, District Judge.

The above-captioned antitrust litigation is presently before the Court on plaintiff's application for preliminary injunctive relief under Rule 65(a) of the Federal Rules of Civil Procedure. A hearing has been held, and the written and oral arguments of the parties duly considered. For reasons set forth below in a form intended to constitute findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure, the preliminary injunction sought by plaintiff will be denied.

## BACKGROUND

This is an action for injunctive relief and treble damages brought by plaintiff Precision Polymers, Inc. ("Precision") under Sections 1 and 2 of the Sherman Act, 15 U.S.C §§ 1 and 2, and §§ 3, 4 and 16 of the Clayton Act, 15 U.S.C. §§ 14, 15 and 26. The complaint also asserts a pendent claim for compensatory damages for malicious interference with advantageous business relationships between plaintiff—a New Jersey-based manufacturer and nationwide distributor of industrial plastic pipe and accessories (i. e., valves, fittings and cement)—and its various sales representatives, including defendant Pillar Industrial Products Corp. ("Pillar").

Defendant Pillar is a Pennsylvania corporation with its principal place of business in Leetsdale, Pa. During the period relevant hereto, Pillar has been the exclusive regional sales agent for sale of the products manufactured by Precision and distributed throughout Western Pennsylvania, Eastern Ohio, Western New York and West Virginia (the "Western Pennsylvania Region" or "Region"). Additionally, Pillar has been the bailee for hire of plaintiff's inventory in the Region.

Defendant Robintech, Incorporated ("Robintech") is a Texas-based corporation engaged in *inter alia,* the manufacture of industrial plastic pipe and of polyvinylchloride (PVC), a substance used in the manufacture of such pipe and accessories. Robintech apparently enjoys a controlling interest in defendant Plastiline, Inc. ("Plastiline"), a Florida-based New York corporation. Plastiline manufactures and distributes plastic valves, fittings and cement, at times selling such products together with industrial plastic pipe made by Robintech, all in competition with the products manufactured by plaintiff. Plastiline maintains a sales outlet and warehouse for the sale of these products throughout the Western Pennsylvania Region in Leetsdale, Pa.

The plastic pipe, valves and fittings made by Precision, Robintech and Plastiline which are implicated in this action are manufactured from PVC and utilized extensively in the mining industry, where roll-grooved PVC pipe and accessories are replacing conventional piping materials. In 1976, sales of PVC industrial pipe and accessories to the mine market in the Western Pennsylvania Region amounted to some $1,700,000 (80% of the total regional sales of such products), of which about $1,130,000 (66.5%) were accounted for by plaintiff, operating exclusively through Pillar; about $400,000 (23.5%) were accounted for by Robintech/Plastiline; the remaining $170,000 in industrial mine pipe market sales (10%) were accounted for by a third manufacturer.

The exclusive business relationship between Precision and defendant Pillar is governed by a written contract permitting the latter to terminate the agreement on 30-days notice to plaintiff. Pursuant thereto, on March 22, 1977, Pillar noticed its intention to terminate its relationship with Precision.

Subsequently, on April 20, 1977, Pillar informed plaintiff that it would in fact consider its contract with Precision terminated as of April 22, 1977—and, further, that Pillar thereafter would enter into an exclusive sales agency and distribution arrangement with Robintech and Plastiline, the operative effects of which apparently would be (1) to constitute Pillar the exclusive agent for Robintech and Plastiline in the Western Pennsylvania Region; (2) to obligate Pillar to handle at least the same product lines for Robintech and Plastiline as it handled for Precision; (3) to obligate Pillar to "refuse to deal" (plaintiff's language) in competitive products, including plaintiff's; and (4) to eliminate Plastiline's Leetsdale warehouse and replace it solely with Pillar's.

The instant lawsuit followed.

1. Marvin Rosenblum, Chairman, President and Chief Executive Officer of Precision, testified

## PRECISION'S STATUS

It is clear from the testimony adduced at the hearing before this Court that Pillar's decision to exercise its contractual right to terminate its exclusive agency agreement with plaintiff was motivated by a not unreasonable concern over Precision's currently severe financial difficulties.

Plaintiff presently is operating as a debtor-in-possession under Chapter XI of the Bankruptcy Act—a status assumed in October, 1976, pursuant to a petition for an arrangement filed by Precision in the United States District Court for the Southern District of New York. Since that time, Precision has consistently suffered substantial operating losses, now totaling more than $1,000,000.

The Court has heard testimony that despite plaintiff's rather bleak financial situation, Pillar continues to enjoy a profitable business relationship with Precision, and that the latter has continued to fulfill the orders placed with it by Pillar in a timely fashion and to provide Pillar with a stable, uninterrupted source of supply. We also have heard countervailing, though not necessarily conflicting testimony that Precision's financial plight has caused Pillar to experience some difficulty in maintaining inventory levels, in receiving certain material and the payment of earned commissions from plaintiff, and in obtaining payment of certain freight bills owed by Precision; additionally, it appears that Pillar currently is unable to offer or supply its customers all of the items listed in Precision's catalogue because of plaintiff's inability to purchase all such items from its suppliers.

What is plain in any event is that it was Pillar's legitimate concern that Precision would not emerge from Chapter XI proceedings (and its consequent concern over its own continuing ability to meet the needs of its customers)—coupled with what plaintiff candidly acknowledges as the bright prospects for a substantial increase in Pillar's profits [1]—that prompted John Pillar,

that he could not fault Pillar for its business decision to terminate its agreement with plain-

the company's president and majority stockholder, to contact Robintech and Plastiline in the early part of 1977 in order to explore the possibility of representing them. The ensuing discussions, initiated entirely by Pillar, gave rise to defendants' proposed exclusive agency arrangement, and to Pillar's notice of its attendant intention to terminate its similar arrangement with plaintiff.

As discussed *infra*, plaintiff asserts that due to its present legal and financial status, termination of the Pillar-Precision agreement, if permitted by a judicial refusal to maintain the status quo via an injunction *pendente lite*, would result in certain irreparable injury to Precision. Indeed, it is plaintiff's rather stark assertion that if its arrangement with Pillar is permitted to be terminated, Precision simply will not be able to survive as an operating company— its reorganization under Chapter XI will fail and it will be forced into bankruptcy and liquidation. Denial of the application for preliminary injunctive relief, we are urged, would be the functional equivalent of a death warrant for plaintiff.

## THE SUBSTANTIVE CLAIM

Before turning specifically to the application for preliminary equitable relief now *sub judice*, it is appropriate to consider briefly both the nature and the imperatives of plaintiff's underlying antitrust claim.

In broad terms, plaintiff's fundamental contention in this case is that Pillar's termination of its exclusive agency agreement with Precision and impending entry into the contemplated agency/distributorship arrangement with Robintech and Plastiline constitutes a unitary course of conduct by all defendants in violation of the Sherman Act's proscriptions against agreements, combinations and conspiracies in (unreasonable) restraint of interstate trade or commerce (Section 1), and against monopolization, attempted monopolization and combinations or conspiracies to monopolize such commerce (Section 2).

Starting from the undisputed premise that substantial interstate commerce is affected by the transactions and businesses involved in the present litigation, plaintiff first contends that Pillar and Robintech/Plastiline are poised to enter into a formal agreement—and indeed already have entered into an informal agreement, combination or conspiracy—not to deal with and to boycott Precision, and that, in plaintiff's language, agreements among persons not to deal with another party or to boycott another party which affect interstate commerce are illegal *per se* under Section 1 of the Sherman Act.[2] Moreover, plaintiff argues, it is unreasonable *per se* under Section 1 to foreclose or exclude a competitor from any substantial market.[3] Here, it is submitted, defendants have agreed or combined to exclude Precision from the relevant product market in the Western Pennsylvania Region through an indivisible course of conduct encompassing both termination of the Pillar-Precision agreement and initiation of defendants' proposed exclusive business relationship.

Plaintiff also asserts a claim under Section 2 of the Sherman Act, which (assuming, as we do, the interstate commerce element) makes it unlawful to create, attempt to create or combine/conspire to create a monopoly in a relevant market.[4]

In this regard, plaintiff avers that effectuation of the proposed agreement between

tiff and enter into a similar agreement with Robintech/Plastiline, and that Pillar possibly could double its income as a result of that decision.

**2.** In this regard, see, *e. g.*, *Klor's v. Broadway-Hale Stores,* 359 U.S. 207, 212, 79 S.Ct. 705, 709, 3 L.Ed.2d 741 (1959) ("Group boycotts, or concerted refusals by traders to deal with other traders, have long been held to be . . . [unlawful per se]").

**3.** See, *e. g.*, *International Salt Co. v. United States,* 332 U.S. 392, 396, 68 S.Ct. 12, 92 L.Ed. 20 (1947).

**4.** See generally 1 and 2 Von Kalinowski, *Antitrust Laws and Trade Regulation* §§ 8.01, 8.02[2], 9.01[1] (1976), concisely delineating the offenses proscribed by Section 2 and both the nature and necessity of the relevant market inquiry.

Pillar and Robintech/Plastiline would increase to 90% defendants' share of the relevant market, defined by plaintiff as PVC industrial pipe and accessories (relevant product market) sold in the Western Pennsylvania Region (relevant geographic market).[5] Such a 90% market share, we recognize, would constitute monopoly power under Section 2.[6] On this basis, plaintiff apparently alleges each of the following:

(1) Actual monopolization[7]—i. e., existing monopoly power in the relevant market, coupled with a requisite general intent to exercise that power, inferred from its acquisition via combination or as the inevitable result of defendants' business arrangements;[8]

(2) Attempted monopolization—i. e., sufficient power to create a monopoly and such overt acts in furtherance of that goal as give rise to a dangerous probability of success, coupled with a specific intent to monopolize;[9]

(3) A combination or conspiracy to monopolize—i. e., an agreement or other concerted action specifically intended to create a monopoly, coupled with overt acts in furtherance of that goal.[10]

With regard to (2) and (3), above, plaintiff purports to discern the existence of both the overt act and specific intent elements in Robintech/Plastiline's "demand"

for an exclusive arrangement with Pillar and the latter's consequent attempt to terminate its similar agreement with Precision.

As to Pillar alone, it is plaintiff's contention that that defendant company's attempted termination of its relationship with Precision, though colorably unilateral and wholly legitimate in and of itself, was in fact a preliminary part of a sum of acts, or course of concerted conduct, intended to exclude plaintiff from and create a Robintech/Plastiline monopoly in the relevant product market in the Western Pennsylvania Region. Therefore, plaintiff submits, Pillar's effort to terminate the Pillar-Precision contract was and is both unlawful and enjoinable.[11]

## THE PRELIMINARY INJUNCTION

Bearing in mind the above capsulization of the elements and general factual components of plaintiff's underlying antitrust claims, we turn to the sole matter presently before the Court in this case: Precision's prayer for preliminary injunctive relief.

Plaintiff's original motion for preliminary equitable relief sought an injunction *pendente lite* against all defendants herein. However, at the time initially set for an early hearing in this matter, it became apparent that defendants Robintech and

---

**5.** It is not entirely clear whether this prospective market share estimate is based on the allegation that plaintiff would be precluded from operating in the Region in the absence of Pillar's services, or on the assumption that effectuation of the transactions here at issue would force Precision out of business entirely; in either case, it is apparently presumed that Robintech-Plastiline would be the recipient of plaintiff's former share of the market.

**6.** See, e. g., *United States v. Aluminum Company of America*, 148 F.2d 416 (2d Cir. 1945). See generally 1 Von Kalinowski, *supra* § 8.02[3].

**7.** Inasmuch as there now exists no actual monopoly in the relevant market, it would seem that plaintiff purports to charge monopolization prospectively.

**8.** See *United States v. Grinnell Corp.,* 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); 1 Von Kalinowski, *supra* § 8.02[1] (elements of

the offense). See *United States v. Griffith,* 334 U.S. 100, 68 S.Ct. 941, 92 L.Ed. 1236 (1948); *United States v. Aluminum Company of America, supra*; 1 Von Kalinowski, *supra* § 8.02[4] (nature and satisfaction of intent requirement).

**9.** See generally 2 Von Kalinowski, *supra* § 9.01[1]. See also *Swift & Co. v. United States,* 196 U.S. 375, 396, 25 S.Ct. 276, 49 L.Ed. 518 (1905) ("Dangerous probability" of monopoly); *Coleman Motor Co. v. Chrysler Corp.,* 525 F.2d 1338, 1348 (3d Cir. 1975) (requirement of specific intent).

**10.** See generally 2 Von Kalinowski, *supra* § 9.02.

**11.** In this regard, see *American Tobacco Co. v. United States,* 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946); *United States v. Aluminum Company of America, supra* at 431.

Plastiline had not yet been served or otherwise given notice of the instant proceeding. Accordingly, the Court continued the hearing in order to permit service to be made upon these parties.

Prior to the second hearing in this case, however, plaintiff filed an amended motion for a preliminary injunction. That amended motion limited plaintiff's request for injunctive relief in two respects: first, the motion was directed against defendant Pillar only, eliminating Robintech and Plastiline as parties to the preliminary proceeding; second, the amended motion curtailed the scope of the preliminary relief requested by plaintiff in that it sought an injunction against Pillar only until August 1, 1977. The motion, however, expressly reserved plaintiff's right to seek further injunctive relief against all defendants, including Pillar, at a later time. It is plaintiff's amended motion which is the focus of our attention and the only matter now *sub judice*.

## A. THE APPLICABLE STANDARD

■ The essence of the preliminary equitable relief requested by Precision is an injunction, at least until August, 1977, against both Pillar's termination of its exclusive agreement with plaintiff and its contemplated entry into a similar agency and distribution arrangement with Robintech and Plastiline.[12] The standards governing issuance *vel non* of such an injunction were enunciated by our Court of Appeals in *Delaware River Port Authority v. Transamerican Trailer Transport, Inc.,* 501 F.2d 917, 919–920 (1974), as follows:

"[A]s a prerequisite to the issuance of a preliminary injunction the moving party must generally show: (1) a reasonable probability of eventual success in the liti-

gation, and (2) that it will be irreparably injured *pendente lite* if relief is not granted to prevent a change in the status quo. *A. L. K. Corp. v. Columbia Pictures Industries, Inc.,* 440 F.2d 761, 763 (3d Cir. 1971). Moreover, this court has repeatedly stated that the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest."[13]

■ This Court has carefully considered the above factors in the context of the instant lawsuit. In my view, plaintiff has demonstrated neither a reasonable probability of eventual success in its action against Pillar, nor that it will suffer irreparable injury if the requested preliminary injunctive relief is not granted. Additionally, I believe that the real possibility of resulting harm to Pillar, in terms of both economic loss and deprivation of liberty, as well as the balance of other pertinent equities, militates compellingly against a grant of the preliminary injunction sought by plaintiff in this case.

## B. PROBABILITY OF SUCCESS

Our review of the present record impels the ineluctable conclusion that plaintiff has failed to adduce any evidence of a probable, or even possible, antitrust violation by defendant Pillar. There is nothing here to indicate that Pillar has joined with other sales agents to boycott or refuse to deal in plaintiff's products, or to exclude plaintiff from the allegedly relevant market by a concerted effort to deprive Precision of a sales outlet in the Region. Nor has plaintiff produced anything persuasive of the proposition that Pillar is part of an impend-

---

**12.** In more specific summary of the wording and form of the amended motion, plaintiff seeks to preliminarily enjoin Pillar:

(a) from terminating its existing agreement with Precision; (b) from boycotting or refusing to deal in Precision's products, or entering into any agreement having that effect; (c) from refusing to represent Precision as a sales agent and bailee on such terms as it has performed

these roles in the past; and (d) from selling any PVC pipe and accessories manufactured or distributed by any firm other than Precision.

**13.** The viability of these yardsticks has been reaffirmed in this circuit as recently as this month. See *System Operations, Inc. v. Scientific Games Development Corp.,* 555 F.2d 1131 (3d Cir. 1977), quoting *Oburn v. Shapp,* 521 F.2d 142, 147 (3d Cir. 1975).

ing monopoly in the purportedly relevant market.

What appears here, rather, is only that Pillar, understandably concerned about a tenuous future with plaintiff, has made an independent, manifestly justifiable business decision to invoke its contractual right to terminate a deteriorating exclusive relationship with Precision, and to substitute a similarly exclusive relationship with another manufacturer which holds substantial economic promise for the future. Despite plaintiff's implicit (and fundamental) argument to the contrary, it would seem obvious that the mere fact that Pillar contemplates an exclusive sales agency and distribution arrangement with Robintech/Plastiline cannot alone suffice to support a finding of that unlawful group boycott or concerted refusal to deal or effort to exclude alleged by Precision. It is not illegal for a manufacturer to require its sales agent to refrain from dealing in or selling competing products.[14] Indeed, an exclusive arrangement is precisely what plaintiff has required of Pillar in the past and is now attempting to compel Pillar to continue.

Moreover, the record herein reveals that Pillar is not the only available sales agent in the claimed relevant market. It appears that there are numerous other potential agents for the sale and distribution of plaintiff's products in the Region, and, in addition, indications that Precision itself possesses all the attributes that have enabled Pillar to perform its duties as sales agent in the past.[15] It further appears that there exists vigorous competition in the Region among a number of suppliers of plastic pipe and accessories, as well as vigorous competition from manufacturers and suppliers of pipe made of other materials. In such circumstances, plaintiff's twin assertions of its impending exclusion from the market and of Robintech/Plastiline's resulting acquisition of a 90% market share both carry a hollow ring.

A final point should be noted, both with regard to plaintiff's Section 2 claims and as a general matter of equity: What Precision actually is requesting in this proceeding is that the Court aid it in maintaining its own admittedly dominant position in what it claims to be the relevant market. This I am not inclined to do. I find that the possibility of plaintiff's eventual success against Pillar in this litigation is remote at best.

## C. IRREPARABLE HARM

Only slightly less tenuous is plaintiff's contention that it will suffer certain irreparable injury if the requested preliminary equitable relief is not granted. The record demonstrates that Precision's severe financial problems arose long before Pillar contemplated termination of its relationship with plaintiff and have continued despite the existence of that relationship. While the harm predicted by Precision—total business collapse—is certainly irreparable, there is substantial reason to believe that it may also be inevitable, with or without Pillar's continued representation.

In this regard, it appears that plaintiff has as many as 15 sales agents nationally, and that sales of Precision's products through Pillar account for only some 10% of the total sales of plaintiff's products. Moreover, as previously indicated, Precision has failed to establish that Pillar is in any way unique or otherwise irreplaceable. In these circumstances, the Court cannot say that plaintiff's survival is contingent upon Pillar's representation or that the irreparable injury which might well eventually befall plaintiff would result from termination of the Pillar-Precision agreement.

## D. POTENTIAL HARM TO PILLAR

Finally, the Court cannot discount the very real possibility that Pillar would suffer

---

14. See *F. T. C. v. Curtis Publishing Co.*, 260 U.S. 568, 581–582, 43 S.Ct. 210, 67 L.Ed. 408 (1923). See also, *C. B. S. Equipment Corp. v. Underwood Corp.*, 240 F.Supp. 413, 419 (S.D.N. Y.1964).

15. Although Precision has had notice of Pillar's termination since March, 1977, it apparently has made no attempt whatsoever to replace Pillar or to establish an alternate distribution arrangement.

its own irreparable injury if compelled to continue its representation of Precision, even if only until August, 1977.

Putting aside the serious argument that a compulsory continuation of the Pillar-Precision relationship might contravene the 13th Amendment's prohibition against involuntary servitude, it is clear that Pillar currently has an opportunity to enter into a business relationship which it justifiably expects to be highly successful. If not seized now, this opportunity may well be lost forever, a casualty of Robintech/Plastiline's likely negotiations with another, available representative. The result would be not only a loss of reasonably anticipated increased profits, but also potentially serious damage to a business rendered dependent upon a manufacturer presently in financial distress and looking to a future that is opaque at best. Furthermore, the longer Pillar is required to represent Precision, the greater the risk that, because of plaintiff's financial condition, Pillar will forfeit its acquired goodwill and, ultimately, its customers. In my view, the potential irreparable harm to Pillar if compelled to represent plaintiff outweighs the speculative harm to Precision that allegedly would result from the termination of that representation.

This Court is not without sympathy for plaintiff. Its financial problems are arduous. It is struggling hard to survive. Its future is uncertain. In the final analysis, however, the Court's empathy with Precision cannot and does not extend so far as to impel what plaintiff requests—an exercise of raw judicial power designed to aid a company in extremis at the expense of the financial interests and personal liberty of a seemingly innocent business associate.

Plaintiff's amended motion for a preliminary injunction will be denied. An appropriate Order will be entered.