486 A.2d 997

THREE COUNTY SERVICES, INC., Trading As
Tri-County News Service

v.

The PHILADELPHIA INQUIRER, Appellant.

Superior Court of Pennsylvania.

Argued March 20, 1984.

Filed Jan. 11, 1985.

Samuel E. Klein, Philadelphia, for appellant.

Hal F. Doig, Media, for appellee.

Before SPAETH, President Judge and BECK and TAMI-LIA, JJ.

SPAETH, President Judge:

This is an appeal from an order granting appellee's petition for a preliminary injunction. Appellant makes several arguments that we need not address because we agree with appellant's argument that appellee did not prove that the preliminary injunction was necessary to prevent immediate and irreparable harm. We therefore vacate the trial court's order and remand for further proceedings.

Appellee's complaint and petition for preliminary injunction were filed on April 20, 1981. Hearings on the petition

were held on May 28, July 14, and September 8 & 10, 1981. On August 17, 1982, the trial court filed the preliminary injunction from which this appeal is taken, and on August 18, an opinion in explanation of the order.

In its opinion the trial court stated the facts as follows:

1. In 1972, the Petitioner [appellee] entered into an oral agreement to deliver newspapers for the Respondent [appellant];

2. The Petitioner did not pay for the route, nor for his customer list;

3. The Petitioner purchased additional customer lists from other deliverymen and eventually "rounded out" his delivery area;

4. The Petitioner was originally titled as a "special adult" which provided him with a travel allowance;

5. The Petitioner, due to a large number of bad credit *risks*, instituted a prepayment plan;

6. The Respondent was aware of the prepayment plan, but took no action except to eliminate the Petitioner's travel allowance;

7. The Petitioner continued to operate his delivery route with no interference from the Respondent;

8. In November, 1980, Petitioner instituted a $1.00 price for the Thanksgiving Day edition of the newspaper;

9. Respondent's Circulation Director, Carlton Rosenburgh, was a customer of the Petitioner;

10. When Mr. Rosenburgh learned of the delivery charge, he decided that the Petitioner was price gouging and as such, he decided to start an alternate delivery system;

11. In setting up an alternate delivery system, the Respondent hired Donnelly Associates to solicit business;

12. Donnelly Associates, as agent for the Respondent, called on Petitioner's customers;

13. In setting up the alternate delivery system, the Respondent offered to sell the newspaper at a price that is less than its cost;

14. The Respondent's agent led the Petitioner's customers to believe that Petitioner would be out of business by January, 1981;

15. The Respondent ceased all solicitations in the Petitioner's area as of January, 1981.

Trial Court Opinion at 1–3.

The trial court's order provided:

1. The Petitioner is entitled to a Preliminary Injunction;

2. The Respondent is enjoined from soliciting Petitioner's customers;

3. The Respondent is to return to the Petitioner those customers obtained through its solicitation of Petitioner's customers;

4. The Respondent is to refer all new customers in Petitioner's geographic area to the Petitioner;

5. The Petitioner shall re-list this matter for the determination of damages.

The trial court recognized that one of the prerequisites of a preliminary injunction is proof that the injunction is necessary to prevent immediate and irreparable harm. In explaining that it was satisfied that there was such proof, the court stated:

[W]e find that the injury here is immediate and the harm is irreparable. The Petitioner has suffered a loss of business which was immediate not only in lost customers but also in having his name 'smeared' by the agent of the Respondent. The irreparable harm was done when Donnelly, agent for the Inquirer, began to solicit customers of the Petitioner and when he told these customers that the Petitioner would be out of business by the end of January, 1981.

The question of whether greater harm would result from refusing the injunction must be answered in the positive.

Clearly the Respondent's failure to turn new customers over to the Petitioner is causing a continuing harm. Further, while no more solicitations have taken place, should the Respondent attempt to further solicit the Petitioner's customers, a far greater harm would result. Trial Court Opinion at 4–5.

The Court further stated, at the end of its opinion:

Injury to reputation or good will is not easily measurable in monetary terms and is irreparable.

Where the economic loss is so great as to threaten the existence of a business, an injunction will issue even though the amount of direct financial harm is ascertainable.

Trial Court Opinion at 14.

As we have mentioned, appellant argues nevertheless that appellee did not prove immediate irreparable harm. More specifically, appellant argues that appellee did not prove any serious threat to its business, and that such harm as appellee did prove is compensable by money damages.

When reviewing an order entering a preliminary injunction, we do not inquire into the merits of the controversy but examine the record only to determine if there were any apparently reasonable grounds for the action of the trial court. *Credit Alliance Corp. v. Philadelphia Minit-Man Car Wash Corp.*, 450 Pa. 367, 301 A.2d 816 (1973); *Zebra v. School District of City of Pittsburgh*, 449 Pa. 432, 437, 296 A.2d 748, 750 (1972). In making this determination, we are controlled by well-settled principles establishing the purpose of a preliminary injunction and the petitioner's burden of proof.

■ The purpose of a preliminary injunction is to preserve the status quo as it exists or existed before the acts complained of, and the injunction should not go beyond preserving the status quo. *Naus & Newlyn, Inc. v. Mason*, 295 Pa.Super. 208, 441 A.2d 422 (1982). Since a preliminary injunction operates until the final adjudication on the merits of the controversy, the court must decide whether the

petitioner will likely be subjected to immediate and irreparable injury if a preliminary injunction is not issued before the final adjudication. Restatement (Second) Torts § 936 Comment e (1979). The petitioner must show the need for immediate relief, and the preliminary injunction, if issued, should be no broader than is necessary for the petitioner's interim protection. *Id.* at § 943 Comment h. *See Credit Alliance Corp. v. Philadelphia Minit-Man Car Wash Corp., supra* (denial of a preliminary injunction affirmed where no showing of urgent necessity to avoid immediate and irreparable harm that could not be compensated); *Herman v. Dixon,* 393 Pa. 33, 141 A.2d 576 (1958) (preliminary injunction dissolved where no showing of urgent necessity to prevent irreparable harm). Given that a preliminary injunction is a "harsh remedy," *Credit Alliance Corp. v. Philadelphia Minit-Man Car Wash Corp., supra,* 450 Pa. at 371, 301 A.2d at 818, the petitioner has a heavy burden of proof. "In order to sustain a preliminary injunction the plaintiff's right to relief must be clear, the need for relief must be immediate, and the injury must be irreparable if the injunction is not granted." *Zebra v. School District of City of Pittsburgh, supra,* 449 Pa. at 437, 296 A.2d at 750 (citation omitted). "Furthermore, when a preliminary injunction contains mandatory provisions which will require a change in the position of the parties, it should be granted even more sparingly than one which is merely prohibitory." *Id.* Here the preliminary injunction does contain mandatory provisions requiring a change of position, for not only did the trial court order appellant to refrain from soliciting appellee's customers in the future, it also ordered appellant to return the customers it had previously solicited and to refer all new customers to appellee.

In applying the principles just recited, we may start with the observation that the trial court found that irreparable harm *was* done and that appellee *has* suffered immediate loss when appellant smeared appellee's name and solicited appellee's customers. The harm thus referred to by the court is past harm. The court found, and there was no

evidence that contradicts the finding, that appellant ceased all special solicitation in appellee's area in January 1981. The court made no finding, and there was no evidence that could have supported a finding, that appellant had intended to or was likely to resume special solicitation in appellee's area pending final adjudication. There was therefore no showing that a preliminary injunction was necessary to prevent special solicitation in appellee's area. Especially was there no such showing given the fact that the preliminary injunction was entered on August 17, 1982, 18 months after the solicitation had stopped. *See Township of South Fayette v. Commonwealth,* 477 Pa. 574, 385 A.2d 344 (1978) (preliminary injunction vacated where sole proof of anticipated injury was evidence of incidents occurring months and years before hearing at facilities operated under different circumstances). *Cf. Sidco Paper Co. v. Aaron,* 465 Pa. 586, 351 A.2d 250 (1976) (preliminary injunction restraining appellant from soliciting business in specified area upheld where appellant was soliciting appellee's customers, appellee's business in area dropped from $490,000 per month to $90,000 per month in one month, and relief was necessary to prevent irreparable harm to appellee's customer relationships).

The only continuing, as distinguished from past, harm referred to by the trial court is the loss of business that appellee continued to sustain as a result of appellant's continuing refusal to turn over new customers to appellee, and as a result of appellant's past solicitation of appellee's customers.

With respect to appellant's refusal to turn over new customers to appellee: It is far from clear that this practice was continuing at the time of the hearings, let alone that it was continuing in August 1982, when the preliminary injunction was entered. Appellee's principal, Mr. Greentree, testified on May 28, 1981, that although he did not get any referrals from appellant from December 1980 through March 1981, since that time appellant had referred three or four customers. N.T. v.1 at 55. Moreover, even if appel-

lant did continue to refuse to refer new customers to appellee, appellee was in no way restricted from soliciting new customers on its own, as it had done in the past. *See* N.T. v.1 at 25–26. In addition, there was no evidence, and the court made no finding, that by itself appellant's refusal to refer new customers to appellee threatened immediate and irreparable harm to appellee's business.

With respect to appellant's past solicitation of appellee's customers: It is not clear, either what was the extent of the loss caused by appellant's actions, or that the loss was so serious as to be an immediate threat to the existence of appellee's business. There was evidence that appellee's net income before Mr. Greentree's draw was $34,000 in 1977, $32,000 in 1978, $34,000 in 1979, $11,978 for January through September 1980, and $12,851 for October 1980 through June 1981. N.T. v. 3 at 26, 49, 50, 185. Appellant's special solicitation of business in appellee's area continued from November 1980 to January 1981. Thus, appellee did prove loss. However, it was uncontroverted that some of the decline in appellee's circulation and net profit after 1979 was due to customer dissatisfaction with actions taken by appellee. In January 1979 appellee introduced a new advance billing program. N.T. v.1 at 37–38, 107–112. In June 1980 appellee introduced a new requirement that a customer must give three days' notice of a request to stop delivery of the newspaper during the customer's vacation. N.T. v.1 at 115–119. In November 1980 appellee introduced a new $1.00 charge for the Thanksgiving day edition of the newspaper. N.T. v.1 at 41–42, 125–29. These new policies resulted in a decline in circulation and net profit. N.T. v.3 at 186, 188. The trial court characterized the decline in circulation as "temporary," Trial Court Opinion at 12, Finding 15, but the court made no finding as to whether, or to what extent, the decline had ceased prior to appellant's special solicitation in appellee's area. It is therefore unclear to what extent appellee's decline in net profit was caused by the new policies implemented by appellee and to what extent it was caused by appellant's actions. *Cf.*

*Precision Polymers, Inc. v. Pillar Industrial Products Corp.,* 432 F.Supp. 700 (W.D.Pa.1977) (irreparable harm not established where plaintiff's financial problems arose before defendant's contemplated termination of relationship with plaintiff).

Moreover, if we assume that appellee did establish that appellant's actions caused it to suffer some loss of business, still, appellee was only entitled to a preliminary injunction if the loss that would be incurred pending final adjudication would not be compensable by an award of money damages. *See In re Arthur Treacher's Franchisee Litigation,* 689 F.2d 1137 (3d Cir.1982) (preliminary injunction vacated where loss can be fully compensated by monetary damages awarded at final judgment). Only when there is proof that the threatened monetary loss is so great as to threaten the existence of the business is a preliminary injunction properly granted.[1] *See id.* (preliminary injunction vacated where evidence insufficient to show that plaintiff was on verge of bankruptcy); *Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197 (2d Cir.1970) (preliminary injunction affirmed where defendant threatened to terminate plaintiff's dealership and thereby end plaintiff's business; award of lost profits will not compensate for loss of right to continue a business); *Graham v. Triangle Publications, Inc.,* 344 F.2d 775 (3d Cir.1965) (denial of preliminary

[1]. We note in this regard that the "irreparable harm" alleged by appellee is solely monetary. Ordinarily, since such a loss is fully compensable in a later action for damages, the equitable remedy of a preliminary injunction is not appropriate; it is only where a threatened monetary loss is of such a magnitude as to render an action for damages inadequate as a remedy, as where the loss threatens the existence of a business, that a preliminary injunction may be appropriate. Where, however, the irreparable harm claimed is not solely monetary, and therefore not subsequently fully compensable in damages, the plaintiff need not prove a threat to the existence of his business, but simply that the damage remedy is not adequate. That was the situation in the cases cited in the concurring opinion. *See John G. Bryant Co. v. Sling Testing and Repair, Inc.,* 471 Pa. 1, 369 A.2d 1164 (1977); *Courier Times, Inc. v. United Feature Syndicate, Inc.,* 300 Pa.Super. 40, 445 A.2d 1288 (1982).

injunction affirmed where it was clear that any loss that plaintiff suffered during proceeding was ascertainable by multiplying number of newspapers sold by profit per sale and case did not involve claimed destruction of business enterprise). Here, appellee did not introduce sufficient evidence to show that the existence of its business was threatened by appellant's actions. At the hearing held on September 8 & 10, 1981, there was testimony by appellee's accountant, based on a profit and loss statement he had prepared, that appellee's net profits were $7,196 for October 1980 through December 1980; $2,872 for January 1981 through March 1981; and $2,783 for April 1981 through June 1981. N.T. v.3 at 26. According to the accountant this situation changed. He testified that he estimated that appellee had a loss of $2,400 in July 1981 and $1,500 in August 1981. *Id.* at 27–28. However, this estimate was not supported by any documentation or explanation. Moreover, appellee's principal, Mr. Greentree, testified that appellee's gross income for August 1981 was $12,088. This gross income was consistent with the gross income for prior months in which appellee had not suffered a loss, and there was no explanation as to why, given this fact, there should be a loss in August 1981 when there had not been in prior months. *Id.* at 199–200. There also was no explanation of why appellant's continued failure to refer new customers and appellant's special solicitation should result in greater losses to appellee's business in July and August 1981 than had resulted from January through June 1981, given that appellant's special solicitation had ceased in January 1981. Finally, the preliminary injunction was not entered until August 1982, which was 18 months after appellant's special solicitation had ceased, 14 months after the petition for a preliminary injunction was filed, and almost one year after the last hearing on the petition was held. At the hearing on May 28, 1981, appellee's contention was that in the absence of extraordinary relief, it would be driven out of business by the end of the summer. N.T. v.1 at 49–50. If there was

such a threat, either it had been realized or it had disappeared by the time the preliminary injunction was entered. In any event, there is no basis in the record for finding that when the preliminary injunction was entered, almost a year later, there was any threat to the existence of appellee's business as a result of appellant's actions.[2]

The order of the trial court is vacated and the case remanded for further proceedings. Jurisdiction is relinquished.

BECK, J., files a concurring opinion.

BECK, Judge, concurring:

I agree with the majority's conclusion that the instant appellee has failed to prove immediate and irreparable harm and therefore is not entitled to a preliminary injunction.

However, I write separately because I believe that despite the explanation of irreparable harm contained in the majority's first footnote, the majority's opinion may be read as implying an overly restrictive construction of irreparable harm in a business setting. In the body of its opinion the majority maintains that "[o]nly when there is proof that the threatened monetary loss is so great as to threaten the *existence* of the business is a preliminary injunction properly granted." (Emphasis added). Thus, the majority's definition of irreparable harm appears to preclude relief where a plaintiff's business will be severely circumscribed, but not completely destroyed, by a defendant's conduct or where a

---

**2.** As noted in discussing our scope of review, *see* text *supra* at ——, we express no view on the merits of the controversy or, if the trial court on final adjudication should rule on the merits in appellee's favor, on appellee's entitlement to permanent injunctive relief. *See Credit Alliance Corp. v. Philadelphia Minit-Man Car Wash Corp., supra.* Our holding is limited to the conclusion that appellee did not establish that it was entitled to a preliminary injunction pending final adjudication on the merits. *Cf. Straup v. Times Herald,* 283 Pa.Super. 58, 423 A.2d 713 (1980), where the trial court ruled on the merits of the controversy and denied permanent injunctive relief.

defendant's actions will not reduce a plaintiff's business but will prevent expansion of the plaintiff's business.

For this reason, I write to emphasize that to which the majority alludes in its first footnote. Now, as previously, a plaintiff may establish the irreparable harm prerequisite for a preliminary injunction by proving the likelihood of a loss that is not entirely ascertainable and compensable by money damages. *John G. Bryant Co. v. Sling Testing and Repair, Inc.*, 471 Pa. 1, 369 A.2d 1164 (1977).

In commercial contexts, Pennsylvania courts have repeatedly issued preliminary injunctions upon proof of impending loss of business opportunities or market advantages, *i.e.*, upon a showing of irreparable harm that did not endanger the plaintiff's entire corporate existence. For example, in *Courier Times, Inc. v. United Feature Syndicate, Inc.*, 300 Pa.Super. 40, 56, 445 A.2d 1288, 1296 (1982), three plaintiff newspapers asserted that they "would suffer irreparable injury by being deprived of an extremely popular feature ['Peanuts' comic strip], hampering their effort to compete" for the prior customers of a defunct newspaper. The defendant newspaper claimed that the plaintiffs had not evidenced irreparable harm because "the plaintiff newspapers would not cease to exist if deprived of 'Peanuts.' " *Id.*, 300 Pa.Superior Ct. at 56, 445 A.2d at 1296. Reasoning that "[p]laintiffs [were] required to show irreparable harm, not annihilation," *id.*, 300 Pa.Superior Ct. at 56, 445 A.2d at 1296, we held that the plaintiffs had carried their burden of proof by establishing the "superior value of 'Peanuts' in the competition for former ... subscribers" of the defunct newspaper, *id.*, 300 Pa.Superior Ct. at 56, 445 A.2d at 1296, and the incalculable worth of "Peanuts" whose "drawing power ... [did] not stand on its own, but only in combination with other features." *Id.*, 300 Pa.Superior Ct. at 57, 445 A.2d at 1297 (footnote deleted). That is, plaintiffs demonstrated the probability of their suffering a loss that was unascertainable and not compensable by money damages.

Analogously, in *John G. Bryant Co.*, the supreme court approved a preliminary injunction enforcing an anticompetitive employment covenant without proof that the plaintiff business would terminate unless the injunction were granted. In analyzing the irreparable harm to be averted by the preliminary injunction, the court explained that an anticompetition

> covenant seeks to prevent more than just the sales that might result by the prohibited contact but also the covenant is designed to prevent a disturbance in the relationship that has been established between appellees and their accounts through prior dealings. It is the possible consequences of this unwarranted interference with customer relationships that is unascertainable and not capable of being fully compensated by money damages ...
>
> . . . .
>
> ... *[S]ome* customers may be persuaded, or even be very willing, to abandon the employer should the employee move to a competing organization or leave to set up a business of his own. . . .

*Id.*, 471 Pa. at 8–9, 369 A.2d at 1167–68 (emphasis added); *see also Alabama Binder & Chemical Corp. v. Pennsylvania Industrial Chemical Corp.*, 410 Pa. 214, 189 A.2d 180 (1963) (supreme court sustained a preliminary injunction forbidding dissemination of trade secrets and violation of anticompetition covenant without proof that the plaintiff business would cease to exist in the absence of an injunction).

Accordingly, I would hold that irreparable harm in a business setting need not be premised upon proof that the plaintiff business will be destroyed if the defendant's actions are permitted to continue. Rather, I would remain with the traditional definition of irreparable harm which requires a showing that the injury likely to be incurred by the plaintiff business is "unascertainable and not capable of being fully compensated by money damages." *John G. Bryant Co.*, 471 Pa. at 8, 369 A.2d at 1167.