**HANOVER ASSOCIATES, Pennrose Management Co., Hanover Associates d/b/a Hanover Village Apts. and Westmark Management Co.**

v.

**TOWNSHIP OF HANOVER, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 8, 1997.
Decided Feb. 5, 1998.

Sherry A. Dalessandro, Wilkes-Barre, for appellant.

Robert C. Cordaro, Dunmore, for appellees.

Before COLINS, President Judge, FLAHERTY, J., and NARICK, Senior Judge.

FLAHERTY, Judge.

The Township of Hanover (Township) appeals from the grant of a preliminary injunction, prohibiting it from enforcing Ordinance 004–96 (Ordinance) which designates the Township as the exclusive hauler of garbage within the Township. Because we find that reasonable grounds existed for the trial court's grant of the preliminary injunction, we affirm.

The following facts gave rise to this dispute. Appellee, Hanover Associates, New York, d/b/a Marion Terrace Apartments (Marion Terrace), is a legal entity authorized to transact business in the Commonwealth of Pennsylvania. Marion Terrace, the legal entity, owns Marion Terrace Apartment complex located in the Township. Appellee, Pennrose Management Company (Pennrose) is a legal entity authorized to transact business in the Commonwealth of Pennsylvania.

Pennrose manages the Marion Terrace Apartment complex. Appellee, Hanover Associates, d/b/a/ Hanover Village Apartments (Hanover Village) is a legal entity authorized to transact business in Pennsylvania. Hanover Village, the legal entity, owns Hanover Village Apartment complex located in the Township. Appellee, Westmark Company (Westmark) is a legal entity authorized to transact business in Pennsylvania. Westmark manages the Hanover Village Apartment complex.

The Township gave notice by publication in several newspapers on or about October 23, 1996 that it intended to enact Ordinance 004–96 which designated the Township as the sole trash hauler within the Township. On November 12, 1996, the Township passed Ordinance 004–96 to be effective January 1, 1997.

Sometime in early February 1997, the Township informed Hanover Village and Marion Terrace that it would commence garbage pick-up at their sites on February 10, 1997. Hanover Village and Marion Terrace filed a complaint in equity and sought a preliminary injunction in the trial court prohibiting the Township from enforcing Ordinance 004–96 against the Appellees. On April 11, 1997, the trial court held a hearing on the preliminary injunction.

The trial court found as a fact that there was a contract in effect from June 1993 until June 1996 between Hanover Village and Waste Management Services Inc. (Waste Management) for Waste Management to haul garbage from Hanover Village Apartment complex. (R.R. at p. 41). The trial court found that the contract was renewable on a yearly basis after June 1996 and was, in fact, renewed in June 1996 for one year. (R.R. at p. 41). Thus, as of the date of the hearing, the renewed contract was set to expire June 1997. The contract between Waste Management and Hanover Village was purchased by Apex Waste Services, Inc. (Apex) when Apex bought out Waste Management. There was a contract signed between Apex and Hanover Village signed February 24, 1997 which was effective, according to the trial court, October 1, 1996 until September 30, 1997. (R.R. at p. 41). However, the trial court found that this contract signed on February 24, 1997 was not controlling. Instead, the trial court found the controlling contract to be the contract between Hanover Village and Waste Management which Apex had assumed when it purchased Waste Management and which was set to expire June 1, 1997. (R.R. at p. 41.)

The trial court also found that there was a contract between Marion Terrace and Art Kerpovich Sanitation Service (Kerpovich) effective November 1, 1996 until October 31, 1998 for Kerpovich to haul trash from Marion Terrace Apartment complex. (R.R. at p. 41).

The system under the contracts provided a number of dumpsters located throughout the apartment complexes where the residents were required to take their garbage. The private contractors would pickup the garbage three times a week. They would also provide bulk garbage (e.g., furniture, big appliances etc.) pickup three times a week. Under the Ordinance, the Township would require that the residents each have individual garbage cans at the curbside where the residents would dump their garbage. The Township would provide garbage pickup at least once a week and would provide bulk garbage pickup once a year, during a certain period of time.

At the end of the hearing, the trial court granted the preliminary injunction on the basis that the Ordinance would interfere with the preexisting contracts between Hanover Village and Apex, and Marion Terrace and Kerpovich. The trial court stated that "I have to be honest with you, if these [preexisting] contracts weren't here, I wouldn't be ruling the way I am." (R.R. at 45.) The trial court verbally indicated his ruling as follows:

> Relative to the Marion Terrace apartments, we're going to grant the preliminary injunction. And if the lawsuit, the underlying lawsuit, has not been resolved within the time period of the contract with Kerpovich Sanitation Service, then this injunction will remain in force and in effect until that contract has been completed.
>
> At conclusion of that contract, the preliminary injunction will be dissolved.

Relative to Hanover Village, the Court finds that sufficient evidence has been presented to allow it to issue a preliminary injunction.

Preliminary injunction will remain in effect from today until May 31, 1997 at which time that preliminary injunction will dissolve.

Preliminary injunction, in both cases will prohibit Hanover Township from collecting any waste refuse at either location and further will allow the entities, the plaintiffs, to dispose of waste in the manner in which they are now doing.

(R.R. at p. 45).

█ Appellate review over an order granting a preliminary injunction is limited to determining whether or not reasonable grounds existed for the equitable relief ordered by the lower court and, unless it is plain that no such grounds existed or that the rules of law relied upon were palpably wrong or clearly inapplicable, the Commonwealth Court must affirm. *Bristol Township Education Association v. School District,* 14 Pa.Cmwlth. 463, 322 A.2d 767, 768 (1974).

The Township presents the following three issues for our review:

1. Whether Appellees, Hanover Village, Pennrose, Marion Terrace and Westmark had the right to negotiate and enter into contracts with private haulers contrary to the enactment of Ordinance No. 004–96 after said Ordinance was published on or about October 23 or 25, 1996?

2. Whether the trial court had any apparent reasonable grounds for granting the preliminary injunction, where Appellees failed to fulfill the necessary prerequisites for the issuance of a preliminary injunction, failed to establish that said preliminary injunction was necessary to prevent immediate and irreparable harm and failed to establish that the activity sought to be restrained is actionable?

3. Whether the Appellant, Hanover Township, has the right to interfere with private contracts already established to regulate, transport and dispose of the solid waste within its boundaries?

(Township brief at p. 3).

In regard to the first issue, the Township presents minimal argument with respect thereto. Reading the record, the Township's argument is premised upon the fact that notice of its proposed ordinance was published in newspapers on October 23 or 25, 1996 and Hanover Village and Apex signed their contract on February 24, 1997 and Marion Terrace and Kerpovich only entered into their contract sometime in November 1996. (See R.R. at pp. 37–38). Thus, according to the Township, since the Appellees had notice of the proposed ordinance, the contracts entered into subsequent to the notice are subject to the Ordinance, i.e., the parties expected that their contracts would be rendered void after the ordinance was finally enacted.

This argument is unpersuasive with respect to the Marion Terrace and Kerpovich contract because although notice of the fact that the proposed ordinance was being voted on occurred in October 1996, there was no assurance that it would necessarily pass. (See R.R. at p. 38. "Sometimes they get passed, sometimes they don't." Statement of trial court).

█ The argument is also unpersuasive with respect to the Hanover Village and Apex contract because the trial court found and we agree that the operative contract was the one assumed by Apex from Waste Management which had been entered into (i.e., renewed for another year) in June 1996 which predated the notice and the effective date of Ordinance 004–96.

█ In regard to the second issue, a preliminary matter must be addressed. Although the parties do not speak to the issue, it appears that the preliminary injunction with respect to the enforcement of the Ordinance against Hanover Village is now moot. By the very terms of the preliminary injunction issued by the trial court, the preliminary injunction was dissolved as of May 31, 1997 because that is when the Hanover Village—Kerpovich contract expired. (R.R. at p. 45). Thus, the Township is no longer restrained from enforcement of its Ordinance as against

Hanover Village. Accordingly, because the preliminary injunction against the Township as it relates to Hanover Village is dissolved, we decline to address it. However, the remaining arguments of the Township must be addressed with respect to the Marion Terrace injunction.

■ To merit the grant of a preliminary injunction, the moving party must show that

1. The relief is necessary to prevent immediate and irreparable harm which cannot be compensated by damages.

2. Greater injury will result by refusing it than by granting it.

3. Granting the injunction restores the parties to the status as it existed immediately prior to the alleged wrongful conduct.

4. There must be a determination the activity of the defendant is actionable.

*Valley Forge Historical Society v. Washington Memorial Chapel*, 493 Pa. 491, 426 A.2d 1123 (1981).

The Township argues that the Appellees did not establish irreparable harm. Appellees argue that termination of 3 times a week garbage pickup service by the private contractors, Apex and Kerpovich, would 1) violate the contracts between Appellees and Apex and Kerpovich; 2) violate Appellees' lease agreements with tenants, thereby permitting the tenants to unilaterally terminate their leases; and 3) violate Appellees' agreements with the Pennsylvania Housing Finance Agency (PHFA) (which funds Appellees) and regulations of the Housing and Urban Development (HUD) to which Appellees are subject. According to Appellees, violations of the contracts with PHFA and HUD's regulations would jeopardize Appellees' stream of income to such an extent that it could cause them to go out of business. Such a threat constitutes irreparable harm pursuant to *Three County Services Inc. v. Philadelphia Inquirer*, 337 Pa.Super. 241, 486 A.2d 997 (1985). In addition, Appellees assert that the Ordinance would require replacing roughly 12 dumpsters with as many as 1200 individual garbage cans because the Township does not presently have a garbage truck capable of handling dumpsters and the garbage would be picked up only one time a week under the Ordinance. According to Appellees, this would adversely affect the health and safety of the area, especially because children play in the area.

The Township asserts that the Appellees failed to identify any specific regulation of HUD or contract provision with PHFA that compliance with the Ordinance would violate. Moreover, the Township asserts that the Appellees failed to prove that even if compliance would violate the regulations or contract provisions, HUD or PHFA would *necessarily* cut off their funding, but only that they may do so. The Township denies that the Ordinance would require Appellees to purchase 1200 garbage cans. Although, the Ordinance may not explicitly require the Appellees to buy garbage cans, someone will have to purchase the garbage cans, and the trial court concluded that Appellees were the ones who would have to do so. Finally, as to causing Appellees to breach their preexisting contracts with the private haulers, the Township argues that this injury can be adequately compensated by damages and thus does not constitute irreparable injury.

■ The trial court found that irreparable harm was shown by the following: the Appellees would have to purchase almost 900 garbage cans, Appellees could possibly lose residents to other apartment complexes which are exempt from the Ordinance and therefore are permitted to use private haulers which provide better services and Appellees could possibly lose funding from HUD and PHFA. As there is evidence of record to support these, we conclude that reasonable grounds existed for finding irreparable harm. (R.R. at p. 5).

■ As to the requirement that greater injury will be suffered by denying the preliminary injunction, Appellees argue that the possibility of losing funding, replacing the dumpsters with hundreds of garbage cans and causing breach of contracts with the private haulers all constitute greater harm than if the Ordinance is not enforced against Appellees. The Township argues that the Appellees failed to establish that they would in fact suffer any type of financial loss and that such loss is merely speculative. The

trial court found in order to fulfill the regulations of HUD and the contract requirements of PHFA and the leases with their residents, it was necessary for the Appellees to continue with their private garbage haulers. (R.R. at p. 130). Again, as there is some evidence in the record, even if it is only testimony by Appellees' employees that these dire consequences will likely occur if the Ordinance is enforced, we cannot conclude that no reasonable grounds existed for the trial court's conclusion regarding the second prong.

■ As to the third prong, Appellees argue that the status quo which was to be maintained was the last actual, peaceable and lawful noncontested status which preceded the pending controversy. *Commonwealth v. Coward*, 489 Pa. 327, 342, 414 A.2d 91, 99 (1980). Here, according to the Appellees, that status was the private garbage haulers removing Appellees' garbage before the enactment of the Ordinance. The Appellees argue that the preliminary injunction merely restored this status quo. The Township does not so much address this argument as much as it alleges that the trial court erred in concluding that the Township should have taken into consideration the Appellees' preexisting contracts with the private haulers. The Township essentially argues that the trial court erred in that the Appellees' contracts with the haulers did not really "pre-exist" the Ordinance because the Appellees were on notice of the impending Ordinance since October 1996. The trial court concluded that granting the injunction here would maintain the status quo, *i.e.,* the Appellees would continue to have their garbage collected as they had previously. As there were reasonable grounds for so concluding, the trial court did not err in finding this prong to have been met.

■ Lastly, the Township argues that the passing of the Ordinance was not "actionable activity" within the meaning of the fourth prong of the test. The Township asserts that it had a right to pass the Ordinance and that it has a right to monopolize garbage collection within its territory, citing, *California Reduction Co. v. Sanitary Reduction Works,* 199 U.S. 306, 26 S.Ct. 100, 50 L.Ed. 204 (1905) and *Gardner v. Michigan,* 199 U.S. 325, 26 S.Ct. 106, 50 L.Ed. 212 (1905) even if the Ordinance terminates preexisting contracts because such does not amount to an "unconstitutional impairment of contractual obligations." (Township's brief at p. 12). Thus, Township argues that because it had a right to enact the Ordinance and the right to do what the Ordinance permitted it to do, its doing so was not actionable. The Appellees argue that while the Township has the right to enact the Ordinance and to control waste within its territory, the Ordinance would impair preexisting contracts, implying that such is "actionable activity." The trial court concluded that while the Township has the right to regulate transport and dispose of waste within their boundaries, there is no rule allowing the Township to interfere with preexisting contracts. (R.R. at p. 131).

Having reviewed *California Reduction Co.* and *Gardner,* the cases cited by the Township, we find that although they support the proposition that a municipality may essentially monopolize garbage collection, they do not at all address the issue of whether a municipality may do so where to do so impairs preexisting contracts or interferes with a contract. Accordingly, we do not find that these cases are dispositive of the issue herein, namely, whether the Township's activity was actionable.

As the record reveals apparently reasonable grounds for the equitable relief granted by the trial court, we affirm the grant of the preliminary injunction prohibiting the Township from enforcing the Ordinance against Marion Terrace. As the preliminary injunction against the Township regarding Hanover Village was dissolved as of May 31, 1997, and therefore moot, we decline to address it.

### ORDER

NOW, February 5, 1998, the order of the Court of Common Pleas of Luzerne County entered on April 11, 1997 at Docket No. 97–E–31 is hereby affirmed insofar as it relates to prohibiting the Township from enforcing its Ordinance against Hanover Associates and Pennrose Management Company at the Marion Terrace Apartments complex. This Court declines to address the propriety of the preliminary injunction as it relates to the

Hanover Village Apartment complex because the injunction was dissolved by the very terms of the trial court's order granting the injunction as of May 31, 1997 and is therefore now moot.