## Wong v. First Union National Bank

*Daniel Levin,* for plaintiff.

*Joseph Derespino, William Cagney* and *Rodman Honecker,* for defendant.

BERNSTEIN, *J.,* November 24, 2004—On May 12, 2003, plaintiff, Bruce Wong, filed this class action lawsuit for breach of contract against defendant First Union National Bank alleging that defendant was charging ATM fees that were in direct violation of their agreement. On September 29, 2003, defendant filed preliminary objections claiming that the plaintiff cannot bring his claim in court because he is bound by an arbitration clause which was contained in a large mailer concerning the effects on account holders of a corporate restructuring. Defendant has separated its preliminary objections into several distinct objections, all of which exclusively arise out of the arbitration clause the defendant claims is binding on plaintiff and his class. On October 20, 2003, plaintiff answered the defendant's preliminary objections claiming the arbitration clause was not binding, unconscionable and against public policy. By order dated April 14, 2004, this court denied the defendant's preliminary objections. This timely appeal followed.

The issues raised on appeal are whether plaintiff's class action lawsuit is subject to a mandatory agreement for arbitration, whether plaintiff can maintain a class action suit at all in the light of the arbitration clause, and whether the court has subject matter jurisdiction in light of the mandatory arbitration clause. Not raised on appeal, but essential to resolution of this issue, is the question of whether the class certification decision itself is proper for arbitration or must be decided by the court. Plaintiff contends an additional issue presented is whether the arbitration clause is enforceable under these circumstances.

Evidence taken on January 29, 2004, reveals the following. The plaintiff, Bruce Wong, maintained a check-

ing account with First Union Bank. The applicable First Union schedule of fees states there is "No charge" for a "First Union ATM transaction." Despite this clear language, the plaintiff was in fact charged $3.50 per transaction by First Union when he used First Union ATM machines not publicly identified as the property of First Union. Consequently, plaintiff claims that the $3.50 charged him for using unidentified but actually owned and operated First Union ATMs is unlawful.

First Union claims a document entitled "Account disclosures: Deposit agreements, disclosures, schedule of fees and funds availability" was sent to all Corestates account holders as part of the mailing package following the merger of First Union and Corestates banks. Plaintiff claims he did not receive this large mailer. Contained at page 13 in the 32 pages First Union claims to have sent to all Corestates customers is a five-sentence arbitration provision. The clause reads:

*"Arbitration of disputes regarding accounts.* If either you or we have an unresolvable dispute or claim concerning your account it will be decided by binding arbitration under the expedited procedures of the Commercial Financial Disputes Arbitration Rules of the American Arbitration Association (AAA) and Title 9 of the U.S. Code. Arbitration hearings will be held in the city where the dispute occurred or where mutually agreed to. A single arbitrator will be appointed by the AAA and will be a retired judge or attorney with experience or knowledge in banking transactions. The arbitrator will award the filing and arbitrator fees to the prevailing party. A judgment on the award may be entered by a court."

Plaintiff asserts that this arbitration clause is unconscionable and unenforceable because he represents a class of consumers who would not have read the clause buried in a detailed mass mailing and could not comprehend its meaning even if read.

Business regularly turns toward binding arbitration as a mechanism for alternate dispute resolution.[1] This is demonstrated in the number of arbitrations annually conducted, in the many excellent firms doing arbitration and other forms of ADR and in the proliferation of mandatory binding arbitration clauses in consumer and business contracts. In virtually every jurisdiction in the United States, the judiciary encourages arbitration as an alternative to the potential delay, costs and unpredictability of litigation.

Arbitration usually provides a quicker, less expensive, and always a more private alternative to traditional litigation. Usually arbitration involves simplified procedures, a less formal setting and more technically experienced and knowledgeable decision-makers. Although similar to traditional litigation in requiring the presentation of proofs, arguments and neutral decision-making, disputants can often tailor their process to suit the specific issues. The lesser formality of arbitration proceedings can minimize hostility between parties and thereby facilitate ongoing and future business relationships.

The organized bar officially recognized the alternative dispute resolution movement in 1976 when the

---

1. Murray S. Levin, *The Role of Substantive Law in Business Arbitration and Importance of Volition*, 35 Am. Bus. L.J. 105, 105 (Fall 1997).

American Bar Association established a Special Committee on Minor Disputes which has now become the Special Committee on Dispute Resolution.[2] Most state and federal bar associations now have ADR committees.

The United States Supreme Court has favorably viewed arbitration as a viable alternative to traditional litigation. In *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,*[3] the United States Supreme Court held that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Furthermore, the Supreme Court has "confirmed that the law of substantive arbitrability and concomitant determinations as to the scope and enforcement of contractual agreements to arbitrate are to be decided on the public policy articulated in the FAA, with a strong presumption in favor of arbitrability."

As early as 1968, The Pennsylvania Supreme Court in *Mendelson v. Shrager* stated that "[Pennsylvania] statutes encourage arbitration and with our dockets crowded and in some jurisdictions congested arbitration is favored by the courts."[4] In *Commonwealth, Office of Administration v. Pennsylvania Labor Relations Board,* the court stated, "The inherent differences between an arbitration panel on the one hand, and courts and administrative agencies on the other, well explain the logic behind the distinction. An arbitration panel is a temporary 'one shot'

---

2. Jean R. Sternlight, *Is Binding Arbitration a Form of ADR?,* 2000 J. Disp. Resol. 97 (2000).

3. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

4. *Mendelson v. Shrager,* 432 Pa. 383, 385, 248 A.2d 234, 235 (1968).

institution, convened to respond to a specific conflict. Once it reaches a decision it is disbanded and its members disperse. Its resolution of the dispute must be sure and swift, and much of its effectiveness would be lost if the mandate of its decision could be delayed indefinitely through protracted litigation." [5] Arbitration is looked upon as a favorable means of resolving disputes because it is a "necessary tool for relieving crowded dockets and ensuring the swift and orderly settlement of disputes." [6]

In this case, plaintiff claims that even if there is a valid and binding arbitration agreement, Pennsylvania law permits plaintiff to maintain this matter as a class action and to do so in court. Indeed, the United States Supreme Court recently confirmed that when parties validly agree to arbitrate, an arbitration clause does not necessarily forbid class action treatment of the arbitration.[7] In *Greentree Financial Corp. v. Bazzle,* the United States Supreme Court held that whether or not an arbitration clause precluded class actions must be determined by the specific terms of the agreement and state law.[8] In Pennsylvania, it is not necessary to decide whether any arbitration agreement specifically provides the right to bring a class action because our Supreme Court has held that class action arbitration may proceed unless specifi-

5. *Commonwealth, Office of Administration v. Pennsylvania Labor Relations Board,* 528 Pa. 472, 480-81, 598 A.2d 1274, 1278 (1991). (citation omitted)

6. *Langston v. National Media Corp.,* 420 Pa. Super. 611, 616, 617 A.2d 354, 356 (1992).

7. *Greentree Financial Corp. v. Bazzle,* 539 U.S. 444, 447, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003).

8. *Id.*

cally precluded by the arbitration agreement.[9] Clearly no prohibition to class arbitration exists in the alleged arbitration agreement herein and accordingly there is no bar to class action arbitration based upon the agreement if enforceable.

Whereas First Union's arbitration agreement clearly does not prohibit a class action, the matter must proceed to a determination of whether class action litigation is appropriate. The decision in this case, having been filed in Pennsylvania, must be made in accordance with Pennsylvania procedural law embodied in our Rules of Civil Procedure 1701 to 1716. Having been filed in Pennsylvania, the decision-maker cannot employ federal standards or those employed by different states. Since class action litigation involves the rights of citizens who do not know the litigation exists there are public policy implications to the class certification decision. That is why in Pennsylvania, the procedural decision of how the case should be litigated, as a class or as an individual claim, is to be decided in a public court room, by an elected or appointed judge.

In *Dickler v. Shearson Lehman Hutton Inc.,*[10] plaintiffs filed a securities action against a brokerage firm for breach of fiduciary duty, breach of contract, and tortious conversion. Despite a written agreement to arbitrate all disputes between broker and client, plaintiffs brought a class action in court. The Superior Court clearly held

9. See *Dickler v. Shearson Lehman Hutton Inc.,* 408 Pa. Super. 286, 296, 596 A.2d 860, 865 (1991); *Stevenson v. Commonwealth, Department of Revenue,* 489 Pa. 1, 5, 413 A.2d 667, 669 (1980).

10. *Dickler v. Shearson Lehman Hutton Inc.,* 408 Pa. Super. 286, 300, 596 A.2d 860, 867 (1991).

that when an arbitration agreement for individual claims is silent as to whether class action arbitrations are permissible, they are allowed. The Superior Court reasoned that allowing class actions to proceed in arbitration is an equitable and reasonable result because:

"Compelling individual arbitration would force individuals already straitjacket by an industry-wide practice of arbitration agreements to fight alleged improprieties at an exorbitant economic cost. Individual arbitration would be small deterrent to companies certain that few proceedings will be instituted against them. Because the principles of res judicata and collateral estoppel are not applicable to arbitration proceedings, each plaintiff would be forced to fully litigate his complaint."

Nonetheless, the *Dickler* court did not compel arbitration!

The *Dickler* court specifically required the *trial court* to retain jurisdiction over class certification proceedings and to determine the class certification issue. In remanding the case to the trial court, the Superior Court gave the following instruction:

"Arbiters because of their limited subpoena power and their lack of reviewability until final order are probably not equipped nor appropriate for the task of class certification.[11]

"The trial court in making its determination regarding class certification must take into account the factors normally relevant to class certification, but also the special nature of arbitration proceedings, including the impact

---

11. *Id.* at 298 n.5, 596 A.2d at 866 n.5.

that court intrusion into the proceedings will have." *Dickler v. Shearson Lehman Hutton,* 408 Pa. Super. at 299, 596 A.2d at 866.

After the trial court determines if a class should be certified and after there has been the constitutionally required notice and a court supervised opt-out procedure, the court must compel arbitration for the class. Should certification be denied, the case must be arbitrated individually. In either case, the certification decision is for judicial determination.

Because class actions involve the rights of non-represented citizens, citizens who have never chosen the lawyer "representing" them and citizens who may not even know the lawsuit exists, a trial court, not an arbitrator, must make class certification decisions and retain ultimate jurisdiction over settlement and other post-decision proceedings. In explaining the decision that class certification is to be decided by a judge before the court compels arbitration, the Superior Court said: "Class-wide arbitration is a different animal than individual arbitration. In addition to the need for a trial court to initially certify the class and to insure that notice is provided for, the trial court will probably have to have final review in order to insure that class representatives adequately provide for absent class members." *Dickler v. Shearson Lehman Hutton,* 408 Pa. Super. at 298, 596 A.2d at 866. (footnotes omitted)

The due process safeguards on class litigation are well established. In 1940, the Supreme Court of the United States in *Hansberry v. Lee*[12] reviewed the seminal con-

---

12. *Hansberry v. Lee,* 311 U.S. 32, 40, 61 S.Ct. 115, 85 L.Ed. 22 (1940).

cept of justice: "It is a principal of general application in Anglo-American Jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process . . . and judicial action enforcing it against the person or property of the absent party is not that due process which the Fifth and Fourteenth Amendments require." For important reasons, class actions are exempt from the general rule on which judicial authority is grounded.[13] Because the rights of an absent plaintiff can be determined by a class action judgment, public policy and basic due process embodied in the United States Constitution and the Pennsylvania Constitution require that a court ensure that adequate notice be given to all class members who will be affected by the outcome of the proceeding.

The Supreme Court of the United States in *Phillips Petroleum Co. v. Shutts*[14] set forth the absolute minimum procedural due process protections which must be afforded absent plaintiffs in a class action lawsuit. The court held that, at a minimum, the absent plaintiffs must receive adequate notice, an opportunity to "opt out," and the court must insure that both the named plaintiff and the appointed counsel do adequately represent the interests of all the absent class members.

"If the forum state wishes to bind an absent plaintiff concerning a claim for money damages or similar relief at law, it must provide minimal procedural due process

---

13. *Id.*
14. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985).

protection. The plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel. The notice must be the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice should describe the action and the plaintiffs' rights in it. Additionally, we hold that due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court. Finally, the due process clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members."

Without these minimal safeguards the lawsuit does not have class action effect.

## NOTICE

The notice requirement of due process is the American concept of fairness.[15] Binding an individual to a judgment he knew nothing about nor had any opportunity to oppose offends the most basic notions of fairness. The Supreme Court of the United States held in *Mullane v. Central Hanover Bank & Trust Co.* that: "The fundamental requisite of due process of law is the opportunity to be heard. This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default,

---

15. *Picard v. Connor,* 404 U.S. 270, 279, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

acquiesce or contest." [16] The Pennsylvania Supreme Court calls notice: "the most basic requirement of due process." [17] Both the Federal Rules of Civil Procedure, Rule 23(c)(2) and the Pennsylvania Rules of Civil Procedure, Rule 1712 require trial judges to approve class notification to ensure that absent plaintiffs receive notice of pending class actions. It is the publicly elected judiciary which must protect absent plaintiffs by controlling class action notice.

## OPT OUT

The United States Supreme Court in *Phillips Petroleum Co. v. Shutts* described the opt out provision needed in class notification to satisfy due process. The court in *Shutts* held that: "the procedure . . . where a fully descriptive notice is sent first class mail to each class member, with an explanation of the right to 'opt out,' satisfies due process." *Shutts,* 472 U.S. at 812, 105 S.Ct. at 2975, 86 L.Ed.2d at 642. Both the Federal and Pennsylvania Rules of Procedure have been enacted solely to protect plaintiffs who wish to opt out of the class. Federal Rule 23(c)(2) and Pennsylvania Rule 1711 allow individuals to opt out of the class. It is the publicly elected judiciary which must protect absent plaintiffs by allowing them to opt out of the proceeding.

---

16. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

17. *Pennsylvania Coal Mining Association v. Insurance Department,* 471 Pa. 437, 452, 370 A.2d 685, 692 (1977).

## NOTICE OF SETTLEMENT

In addition to notice of pending litigation, due process requires notice of settlement as well. This year the Pennsylvania Superior Court in *Wilkes v. Phoenix Home Life Mutual Insurance Co.,*[18] held that: "Adequate notice of a class action settlement is required by the constitutional mandate of due process. . . . To satisfy due process, notice of a class action settlement must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' *Mullane,* 339 U.S. at 314, 70 S.Ct. 652. Although the notice need not be entirely comprehensive, the notice must not be misleading or materially incomplete. *Weinberger v. Kendrick,* 698 F.2d 61, 70 (2d Cir. 1982). The notice must contain an adequate description of the proceedings written in objective, neutral terms that may be understood by the average absentee class member. *In Re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1104 (5th Cir. 1977). The notice also must 'contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment.' *Id.* at 1105." Settlement must be approved by the court to prevent collusion between defendants and the named representative plaintiff. Federal Rule of Civil Procedure 23(e) and Pennsylvania Rule of Civil Procedure 1714 require the court to approve any settlement and to make sure that absent plaintiffs are

18. *Wilkes v. Phoenix Home Life Mutual Insurance Co.,* 851 A.2d 204, 210-11 (Pa. Super. 2004). (footnote omitted)

adequately notified. It is the publicly elected judiciary which must protect absent plaintiffs by controlling class action settlement notice.

## ADEQUACY OF REPRESENTATION

The Supreme Court of the United States in *Hansberry v. Lee* held that due process allows an absent plaintiff to be bound by a judgment only if he has been adequately represented.

"It is familiar doctrine of the federal courts that members of a class not present as parties to the litigation may be bound by the judgment where they are in fact adequately represented by parties who are present, or where they actually participate in the conduct of the litigation in which members of the class are present as parties, or where the interest of the members of the class, some of whom are present as parties, is joint, or where for any other reason the relationship between the parties present and those who are absent is such as legally to entitle the former to stand in judgment for the latter. In all such cases, so far as it can be said that the members of the class who are present are, by generally recognized rules of law, entitled to stand in judgment for those who are not, we may assume for present purposes that such procedure affords a protection to the parties who are represented, though absent, which would satisfy the requirements of due process and full faith and credit." [19]

Likewise, the Pennsylvania Superior Court requires that for the named plaintiff to adequately represent the

---

19. *Hansberry v. Lee*, 311 U.S. 32, 40, 61 S.Ct. 115, 85 L.Ed. 22 (1940).

class: "[A] litigant must be a member of the class which he or she seeks to represent at the time the class is certified by the . . . court." [20]

Adequate representation of absent plaintiffs is ensured by both the Federal and Pennsylvania Rules of Civil Procedure in two ways. Federal Rule 23(a) and Pennsylvania Rule 1702 require that "there are questions of law or fact common to the class" and that "the claims and defenses of the representative party are typical of the claims and defenses of the class." These two provisions mandate that "the relationship between the parties present and those who are absent is such as legally to entitle the former to stand in judgment for the latter." [21] Secondly, federal and the Pennsylvania rules require the judge to make sure that the attorneys representing the class are competent to handle complex class action litigation. Federal Rule of Civil Procedure 23(g) requires the judge to look at experience, knowledge of the law and the resources counsel will commit to representing the class. Pennsylvania Rule of Civil Procedure 1709 sets forth the factors to consider when considering fair and adequate representation such as conflicts of interest and attorney resources. It is the publicly elected judiciary which must protect absent plaintiffs by ensuring adequate representation.

---

20. *Janicik v. Prudential Insurance Co. of America,* 305 Pa. Super. 120, 135, 451 A.2d 451, 458 (1982).
21. *Id.*

## JUDGE v. ARBITRATOR

The above rules are in place to protect the due process rights of absent class members. These rules ensure that the court be an advocate for those who will be affected by the outcome of a class action proceeding. The Supreme Court in *Phillips v. Shutts* required a system where courts as well as the named plaintiffs and appointed counsel protect the interests of the absent class members. Judges are public officials who are publicly charged with the duty to ensure that the rights of the individuals before them and the public at large are not compromised. In contrast, arbitrators are private individuals paid by the parties before them and controlled by the rules of different various arbitration organizations. An arbitration does not demand a public hearing nor is it necessarily controlled by public rules of civil procedure. Arbitrators have no duty to the public at large. Arbitration does not necessarily serve the public interest, it is only designed as an expeditious economic process for the parties who have paid and selected the arbitrator. An arbitrator may not afford the same guarantee that absent plaintiffs will be provided the procedural safeguards demanded by the Constitution of the United States and the Pennsylvania Constitution, codified in Federal Rule of Civil Procedure 23 and Pennsylvania Rules of Civil Procedure 1701-1706. These rules insure that absent class members receive their constitutionally required, adequate notice, be given an opportunity to opt out and receive fair and adequate representation.

Public policy mandates that the due process rights of the absent plaintiffs be protected by a public official and not a private arbitrator. The Pennsylvania Superior Court

clearly held in *Dickler v. Shearson Lehman Hutton* that it is the trial court, not an arbitrator, who must preside over the class certification process and must publicly ensure that absent plaintiff receive adequate notice.[22]

The *Dickler* decision compels denial of defendant's preliminary objections at this stage in the proceedings. Although the arbitration agreement herein is no obstacle to class action, the court must determine class certification. Accordingly, defendant's preliminary objections are denied and this court, not an arbitrator, shall proceed to determine whether this class should be certified.

Since this court must rule on class certification issues, a full and complete record can be developed before ruling upon the competing factual and public policy issues presented herein concerning the alleged "unconscionability" of the agreement. These factual issues are therefore deferred for development of a full record as part of discovery.

For the reasons set forth above, the decision of the court should be affirmed.

---

22. *Dickler,* 408 Pa. Super. at 298-99, 596 A.2d at 866.